Maureen TIERNEY, for herself and as mother of Philip T. Newton, Plaintiffs–Appellees,

Patrick J. Newton, Plaintiff,

v.

Joel R. DAVIDSON; Thomas E. Williams, Defendants–Appellants,

State of Vermont, Defendant.

No. 324, Docket 97–7172.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1997.

Decided Jan. 7, 1998.

Timothy B. Tomasi, Assistant Attorney General, Montpelier, VT (William E. Griffin, Chief Assistant Attorney General, Office of the Attorney General, on the brief), for Defendants–Appellants.

Alicia Aiken, Rutland, VT (Herbert G. Ogden, Jr., Liccardi Crawford & Ogden, P.C., on the brief), for Plaintiffs–Appellees.

Before: JACOBS and LEVAL, Circuit Judges, and RESTANI, Judge*.

JACOBS, Circuit Judge:

Officers Joel Davidson and Thomas Williams of the Vermont State Police (the "Officers") responded separately to a report of a raucous domestic dispute at Maureen Tierney's home. Tierney, suing on behalf of herself and her son, Philip Newton, claims that the Officers conducted an unlawful search of her premises and used excessive force against her and her son on that occasion. The Officers now appeal the decision of the United States District Court for the District of Vermont (Murtha, *Ch. J.*), denying their motion for summary judgment on qualified immunity grounds. We vacate the district court's order and remand for entry of summary judgment in favor of the Officers on plaintiffs' federal claims because: (i) the district court erred in concluding that a genuine dispute existed as to material facts; (ii) the district court erred in according preclusive effect to a state court's suppression ruling; and (iii) it was objectively reasonable for the Officers to believe that their actions did not violate clearly established law. In addi-

tion, having dismissed the federal claims, we dismiss the state claims for lack of jurisdiction.

## BACKGROUND

The facts, viewed on this motion for summary judgment in the light most favorable to plaintiffs, are as follows:

On September 21, 1992, Officer Davidson was dispatched to a residence on Little Rutland Road in Castleton, Vermont. The dispatcher told Davidson that she had received a call from an unnamed woman who reported that a "bad" domestic dispute was in progress, that there had been previous domestic disturbances at the same house, and that this episode was the worst yet. As Davidson drove down Little Rutland Road, he saw two men on the road, and approached them. One of them said that his wife had called the police. They pointed to a residence and told Davidson that it had been the scene of prior domestic altercations, that this was the worst yet, and that they had heard screaming and banging up until Davidson's approach.[1] Tierney's residence was quiet as Davidson walked up to it. According to Davidson, the silence suggested to him that someone in the house might be injured, and the fact that the dispute had just ended suggested to him that both parties to the fight were still present.

Behind a screen door, the door to Tierney's residence was closed and locked, with a broken glass pane through which a hand could reach. The door led onto a landing from which a stairway descended.

Davidson opened the door through the broken pane, and entered the house without knocking or identifying himself.[2] Tierney then appeared at the bottom of the stairs with her two children. Davidson told her he had received a noise complaint and asked her about the dispute. Tierney said nothing had happened, there was no problem, and asked

---

* Hon. Jane A. Restani, of the United States Court of International Trade, sitting by designation.

1. Tierney claims that any information imparted by the anonymous caller and by these two men is hearsay and inadmissible. However, these statements are not being offered for their truth, but for their effect on Davidson's state of mind.

2. Solely for the purposes of their motion for summary judgment, defendants conceded that the inner door was closed and locked, that Davidson opened the door through the window pane, and that Davidson did not knock and identify himself.

him to leave. Tierney's face was red and she seemed upset and shaken. Davidson headed down the stairs. Tierney then told him to "get the fuck out." Davidson asked her if there was anyone else in the house, and she said no. Davidson asked her whom she had argued with; Tierney told him "it was none of his business," but then added that the person had left the house. Again Davidson asked who had been arguing with her; again Tierney denied any argument; again Tierney told Davidson to "get the fuck out." Davidson persisted and Tierney now responded that the other person had gone. Davidson warned Tierney that he feared for the safety of the children and told her that they could be placed with Social and Rehabilitative Services if they remained in danger.

At that point in the conversation, Davidson surveyed the visible areas of the house and moved towards the children's bedroom. Tierney stepped in front of him to block the bedroom doorway; Davidson grabbed her wrist in a firm grip, and moved her backward through the doorway into the bedroom, letting go after about ten seconds without hurting her. In the children's bedroom, Davidson looked under the beds. Again Davidson warned that the children would be removed if they were in danger, and held Philip's wrist for five seconds without hurting him.

Meanwhile, Williams arrived at the house and learned from a bystander that Davidson was inside. Williams found the door open, and could hear Tierney and Davidson yelling. He then entered the house to provide backup.

After Williams reached the bottom of the stairs, a man grabbed him by the shoulder and loudly told him to leave. This was Patrick Newton, Tierney's boyfriend and the father of her children. The Officers, perceiving that Williams was being assaulted and fearing that Newton might gain control of his service revolver, jumped on Newton to subdue him. Williams tried to wrestle Newton to the ground. Tierney claims that the Officers delivered six or seven punches to New-

ton's head. As Williams was pinning Newton on the floor, Tierney tried to pull Williams off and tackle him. In response, Williams struck Tierney on the forearm with his nightstick. The Officers eventually peppersprayed Newton, subdued him, handcuffed him, and led him from the house.[3]

As the Officers removed Newton, Tierney attempted to follow them out of the house, but Davidson grabbed her arm and threatened to remove the children if she did not stop interfering. After Newton was placed in the police car, Tierney saw Davidson speaking with a man she had never seen, who was inside her doorway, one step down from the landing. Tierney told the man to leave; Davidson told her that the man on the step was his informant; and several seconds later, both men left the house.

Newton was later charged with impeding an officer during an investigation of an alleged domestic assault, but the Vermont District Court granted Newton's motion to suppress and dismissed the case. The state court found that even if the statements of the neighbors and the suddenly silent premises could lead police reasonably to believe that an emergency existed when they entered the premises, the Officers had little evidence after entry to support a reasonable conclusion that an emergency continued to exist. There was no overturned furniture, no blood, no dangerous weapon, no hysterical victim, no noise; the putative victim told Davidson that the other party had left, and asked Davidson to leave as well. The state court ruled that the Officers' continued search of the premises exceeded the scope of a permissible search because "insufficient circumstances existed for a reasonable person, without further information, to conclude that an emergency still existed or that anyone inside was still in need of assistance at that point." The state's attorney did not appeal.

Plaintiffs now assert claims pursuant to 42 U.S.C. § 1983, and the Vermont constitution and common law.[4] After completion of dis-

---

**3.** Patrick Newton was originally a plaintiff, but his action was dismissed in February 1996 on consent of the parties.

**4.** The claims against the State of Vermont were dismissed in July 1996.

covery, the Officers moved for summary judgment, asserting immunity from suit even under Tierney's version of the facts. The district court denied the motion, ruling that the state court suppression decision "precludes a finding that the defendants are entitled to a qualified immunity defense as a matter of law." The court continued:

> Here ... there exists a genuine factual dispute as to whether the defendants entered a closed door upon initial entry into plaintiff's home. There are also factual disputes regarding the reasonableness of the defendants' asserted belief in "exigent circumstances" and, assuming the initial existence of exigent circumstances, whether and when the defendants exceeded the permissible scope of their limited privilege to be in plaintiff's home. Accordingly, on the instant record, the Court cannot conclude the defendants did not violate clearly established law, nor can it find the defendants' actions were objectively reasonable.

## DISCUSSION

### I

We consider at the outset plaintiffs' argument that we lack jurisdiction to entertain this interlocutory appeal. Generally, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We have held that an interlocutory appeal is available

> to challenge the trial judge's rejection of the immunity defense where the defendant contends that on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law because those facts show either that he "didn't do it" or that it was objectively reasonable for him to believe that his action did not violate clearly established law.

*Salim v. Proulx,* 93 F.3d 86, 90–91 (2d Cir. 1996). Even where the lower court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant contests the existence of a dispute or the materiality thereof, or (what may be the same thing) contends that he is entitled to qualified immunity even under plaintiff's version of the facts. *See Salim,* 93 F.3d at 91; *see also Martinez v. City of Schenectady,* 115 F.3d 111, 114 (2d Cir.1997) ("Simply declaring that genuine issues of fact exist is not sufficient, in and of itself, to prevent an appeal."). Only "an interlocutory appeal in which a defendant contends that the district court committed an error of law in ruling that the plaintiff's evidence was sufficient to create a jury issue on the facts relevant to the defendant's immunity defense" is not permissible. *Salim,* 93 F.3d at 91.

We have jurisdiction to consider this appeal. Defendants here contend that even according to plaintiffs' version of the facts, they are entitled to summary judgment. Moreover, contrary to the district court's decision, no disputed fact is material to the resolution of defendants' qualified immunity motion. The district court cited the parties' dispute as to whether the door was open or closed when the police entered. However, defendants conceded—for the purposes of their summary judgment motion—that the door was closed. The two remaining issues identified by the district court as material facts in dispute amount to the ultimate contested issue of whether it was objectively reasonable for the Officers to believe that their actions were legal; but we have held that when the facts that bear on the circumstances are not in dispute, the issue of whether the defendants acted reasonably should be determined by the court on a motion for summary judgment. *See Lennon v. Miller,* 66 F.3d 416, 422 (2d Cir.1995) ("However, in the absence of a material factual dispute, the question of whether it was objectively reasonable for the officers to believe that they did not violate the plaintiff's rights is a purely legal determination for the court to make."); *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.1990) ("The better rule, we

believe, is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible . . . ."); *see also Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").[5]

Because there are no material disputes of fact for the purposes of the summary judgment motion, and because the Officers claim that their actions were protected by qualified immunity, we have jurisdiction to determine on appeal whether defendants' qualified immunity defense has merit.

■ The Officers also challenge on appeal the district court's ruling that the state court's suppression decision has some preclusive effect in this case. This is a purely legal question that may have influenced the district court's qualified immunity ruling; accordingly, we have jurisdiction to consider this issue on an interlocutory appeal. *See Golino v. City of New Haven,* 950 F.2d 864, 868 (2d Cir.1991).

## II

■ The district court attached some preclusive effect to the state court's suppression ruling in Newton's criminal case. Because the parties had insufficiently briefed the issue, the district court was "unprepared to definitively declare [that State] Judge McCaffrey's findings preclude further litigation of any issue before this Court," but the court did hold that Judge McCaffrey's ruling, and its "factual finding of no exigent circumstances, is entitled to deference and precludes a finding that the defendants are entitled to a qualified immunity defense as a matter of law." Defendants claim that the district court erred in attaching any preclusive effect to the state ruling. We agree.

A party's ability to relitigate an issue decided in a prior state court litigation depends on the law of the state in which the earlier litigation occurred. 28 U.S.C. § 1738; *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Under Vermont law, issue preclusion applies when:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Trepanier v. Getting Organized, Inc.,* 155 Vt. 259, 583 A.2d 583, 587 (1990). Several of these requirements are unsatisfied here.

First, the Officers were not parties to the state criminal action against Newton; nor are they in privity with the State of Vermont. *See Lamb v. Geovjian,* 165 Vt. 375, 683 A.2d 731, 735 (1996) ("[A] public official sued in her individual capacity is generally not considered to be in privity with the government for the purpose of res judicata."); *see also Kraushaar v. Flanigan,* 45 F.3d 1040, 1050–51 (7th Cir.1995) (dismissal of criminal charges against plaintiff for lack of probable cause did not preclude relitigation of probable cause issue by defendant police officials in wrongful arrest action); *Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.1971) (per curiam) (adverse rulings in criminal action did not preclude defendant police officers from litigating lawfulness of search in civil action); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4458, at 508 (1981) ("[A] judgment against a government does not bind its officials in subsequent litigation that asserts a personal liability against the officials.").

Second, the issue presented in the state suppression hearing was not identical to the issue presented here. The state court decided that the continuation of the search after the initial entry was unlawful because it was no longer reasonable for the Officers to believe that there was an emergency justifying

---

5. Tierney argues that under *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir.1994), the qualified immunity determination is for the jury. However, that case is distinguishable because the Court pointed to several material facts which were in dispute and which precluded determination of the qualified immunity issue before trial. *Id.* at 650.

the search. The state court did not resolve the constitutionality of the initial entry or the use of force against Tierney or Philip Newton. In addition, although the state court determined that it was illegal to continue the search in the absence of signs of wreckage or gore, the state court did not say whether it was *objectively reasonable* for the Officers to believe that what they did was legal. *See Lennon,* 66 F.3d at 424 (noting that state court suppression decision did not decide objective reasonableness issue). A further important distinction is that the burden in the state action was on the state to prove that an exception to the warrant requirement applied, whereas here the burden is on Tierney to establish that the search was unlawful. *Ruggiero v. Krzeminski,* 928 F.2d 558, 563 (2d Cir.1991).

Third, the Officers did not have a full and fair opportunity to litigate in the state court because they were not parties to that action and there is no evidence of their participation in or control over those proceedings.

Accordingly, it was improper for the district court to attach *any* preclusive effect to the state court decision, and the district court erred in stating that the decision precluded judgment for the Officers as a matter of law.

## III

 We review the district court's denial of summary judgment *de novo. Maxwell v. City of New York,* 102 F.3d 664, 667 (2d Cir.1996), *cert. denied sub nom. Maxwell v. Bratton,* —— U.S. ——, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim,* 93 F.3d at 89 (citations omitted). "The objective reasonableness test is met if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id.* at 91 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)); *see also Lennon,* 66 F.3d at 421 (holding that sum-

mary judgment on a qualified immunity defense is appropriate "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances"). "[Q]ualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances." *Id.* at 424.

### A. *Davidson's Entry into Plaintiffs' House*

Plaintiffs claim that Davidson violated the Fourth Amendment when he entered Tierney's house without a warrant.[6] The Officers counter (i) that Davidson's entry into Tierney's house was lawful because it fell within the "exigent circumstances" or "emergency aid" exception to the warrant requirement, or (ii) at a minimum, it was objectively reasonable for Davidson to have believed that the search was legal under this exception.

 Warrantless searches inside a home are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). However, "[p]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Root v. Gauper,* 438 F.2d 361, 364 (8th Cir.1971); *see also Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990); *United States v. MacDonald,* 916 F.2d 766, 770 (2d Cir.1990) (in banc); *United States v. Gallo–Roman,* 816 F.2d 76, 79 (2d Cir.1987). Courts must apply an objective standard to determine the reasonableness of the officer's belief. *See Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) ("Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."). However, "[t]his probable cause requirement[ ] must be applied by reference

---

**6.** Plaintiffs do not dispute that Williams' entry into the house was protected by qualified immu- nity.

to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." 3 Wayne LaFave, *Search and Seizure* § 6.6(a), at 391 (3d ed.1996).

Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger. For example, in *Magnuson v. Cassarella*, 813 F.Supp. 1321 (N.D.Ill.1992), police were called to the scene of a domestic disturbance by a neighbor who heard screams and was concerned about the infant in the house. *Id.* at 1322. When the police arrived outside the house, the neighbor reported—and the officer could hear—the screaming. The court found that the unannounced, warrantless entry into the house was justified by exigent circumstances:

> [The officer] arrived at the ... home in response to a call from a neighbor who reported a domestic disturbance in progress. [The officer] himself heard screams coming from the ... home, and was informed at the scene by the neighbor that an infant was involved. There is no question that a reasonable police officer faced with the situation encountered by [this officer] would believe that entry into the home was necessary to protect the safety of others. Indeed, as noted by [the officer] "[t]his type of situation has the possibility of an explosive and sudden eruption of violence"....

*Id.* at 1323.

Similarly, the police in *State v. Applegate*, 68 Ohio St.3d 348, 626 N.E.2d 942 (1994), arriving at the scene in response to a "priority" domestic violence call, "heard noises indicating that violent activity was occurring inside." *Id.* at 944. The court held that their subsequent entry was justified by exigent circumstances. *Id.; see also State v. Greene*, 162 Ariz. 431, 784 P.2d 257, 259 (1989) (en banc) ("These calls commonly involve dangerous situations in which the possibility for physical harm or damage escalates rapidly.... The call itself creates a sufficient

indication that an exigency exists allowing the officer to enter a dwelling if no circumstance indicates that entry is unnecessary.").

■ Here, there is little doubt that it was reasonable for Davidson to believe that the search was justified by exigent circumstances. Davidson had been trained to treat these calls as "priority" and to expect violence in many such disputes. He was responding to what he was told was a "bad" domestic disturbance, the worst yet at this location according to experienced observers; when he arrived at the scene, he was informed by neighbors that the shouting had ended right before his arrival; and as he approached the house, Davidson heard nothing and found a broken window pane. It was reasonable for Davidson to believe that someone inside had been injured or was in danger, that both antagonists remained in the house, and that this situation satisfied the exigent circumstances exception. Accordingly, Davidson is immune from suit for any claims arising from his entry.

*B. Davidson's Continued Presence and Search of the House*

■ Tierney also claims that Davidson's continued presence in the house and his search of the children's bedroom violated the Fourth Amendment. The Officers argue that Davidson's search was justified and reasonable, because (*inter alia*) once Davidson discovered Tierney and confirmed that there had been a domestic dispute, it was imperative that he find the other participant in the disturbance to ensure that Tierney and the children were no longer in danger and that the emergency had passed.

"[A] warrantless search must be strictly circumscribed by the exigencies which justify its initiation." *Mincey*, 437 U.S. at 393, 98 S.Ct. at 2413 (internal quotation marks omitted). As one commentator has noted:

> As to what may be done by the police or other public authorities once they are inside the premises, this must be assessed upon a case-by-case basis, taking into account the type of emergency which appeared to be present.... The officer's post-entry conduct must be carefully limit-

ed to achieving the objective which justified the entry—the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance.

3 LaFave, *supra*, § 6.6(a), at 400–01. For example, in *United States v. Barone*, 330 F.2d 543, 545 (2d Cir.1964), the invasion of a bathroom in the course of a warrantless search triggered by screams coming from the apartment was justified when the officers were unable to ascertain the reason for the screams solely from their survey of the living room. *Id.; cf. Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276 (1990) ("The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.").

Here, domestic violence training warned Davidson about the inherent sensitivity and volatility of this situation. He entered the house for the purpose of ensuring that none of the occupants was in need of medical aid or protection. Tierney's response did not allay his well-founded concern that she or the children were in danger; her face was red, and she appeared shaken. Further cause for Davidson's concern was Tierney's false denial that any altercation had taken place. Tierney's deposition reflects that she first told Davidson that there was no problem or dispute; she then changed her story and stated that the identity of the other person involved in the dispute was "none of [Davidson's] business" and that the person had left. It was perfectly reasonable for Davidson to conclude that there had been a serious domestic dispute, that the other participant in the dispute was still on the premises and waiting in another room for the police to leave, and that Tierney and the children were intimidated and in danger. Nor was Davidson required to rule out the contingency that the other participant was pointing a gun at Tierney from another location or that Tierney was the aggressor and that she had hidden her victim in another room. The logical means to defuse the situation was to find the other person and ensure that he or she presented or was in no further danger. Maybe some reasonable officers would have disregarded these dangers; fortunately, other reasonable officers show more initiative.

Tierney argues, frivolously, that Davidson was required to believe her statements that no dispute had occurred and leave the house. Tierney's denials contradicted the independent reports of a dispute; and her statements to Davidson were self-contradictory, so that it was clear she was lying. *See United States v. Bartelho*, 71 F.3d 436, 442 (1st Cir.1995) ("[T]he police were not required to take [the victim's] statements at face value, given her demeanor, their training regarding domestic violence, and [the neighbor's] report."); *Magnuson*, 813 F.Supp. at 1324 ("[E]xigent circumstances do not end merely because the victim indicates that she is no longer in danger. That is a determination for the officer to make independently in light of the totality of the circumstances."). Nor did the absence of blood, overturned furniture or other signs of tumult render Davidson's belief that danger existed unreasonable. Davidson was not required to withdraw and go about other business, or stand watch outside the premises listening for the sounds of splintering furniture.

Indeed, it may have been a dereliction of duty for Davidson to have left the premises without ensuring that any danger had passed. *See Barone*, 330 F.2d at 545. And Davidson could not tell that the danger had passed unless he found the other participant in the dispute. *See State v. Raines*, 55 Wash.App. 459, 778 P.2d 538, 542–43 (1989) ("[T]he fact that the occupants appeared to be unharmed when the officers entered did not guarantee that the disturbance had cooled to the point where their continued safety was assured. Until they had an opportunity to observe [the boyfriend] and talk to him, they had no knowledge of his condition and state of mind."). Vermont State Police policy requires that officers responding to a domestic dispute "ensure that the scene is no longer violent[,] assess the need for medical attention," and "interview all parties separately."

It was objectively reasonable for Davidson to believe that a limited search of the premises to locate the other person involved in the dispute was necessary to ensure the safety of the people on the premises (including Tierney's two young children), and therefore lawful under the circumstances. Accordingly, Davidson is immune from suit for his continued presence in, and search of, the premises.

*C. Authorized Entry of a Third Party Onto Premises*

Plaintiffs claim that the Officers are liable for authorizing a third party to enter the premises, or failing to remove him at Tierney's request. However, it was reasonable for Davidson to believe that his actions were lawful; Davidson had just made an arrest and the house was now a crime scene; the third party, whom Davidson identified as an informant, was just inside the premises; any intrusion into the house was minimal; and Tierney concedes that they left the house seconds after she objected. Davidson's actions in connection with the presence of this third party are protected by qualified immunity.

*D. Use of Excessive Force against Tierney and Philip Newton*

Plaintiffs also claim that the Officers used excessive force: (i) when Davidson grabbed Tierney's arm to move her out of the doorway to the children's bedroom; (ii) when Davidson grabbed Philip Newton's arm; (iii) when Williams hit Tierney with a nightstick after she joined the struggle with Patrick Newton; and (iv) when Davidson grabbed Tierney's arm to stop her from following Patrick Newton outside.[7] However, the Officers are entitled to qualified immunity on these claims as well.

Plaintiffs do not assert that they were arrested or seized, and therefore these claims fall outside the Fourth Amendment protections applied in *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), and are governed instead by the Due Process Clause of the

Fourteenth Amendment. Under *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973), a four-part test is employed to determine whether force is excessive under the Fourteenth Amendment, *i.e.*, whether it "shocks the conscience." *See Rahman v. Philip*, No. 92 CIV. 5349 (SHS), 1995 WL 679251, at *4 (S.D.N.Y. Nov. 15, 1995) (applying *Johnson* test to excessive force claim under Due Process Clause), *aff'd*, 104 F.3d 356 (2d Cir.1996) (summary order), *cert. denied*, —— U.S. ——, 117 S.Ct. 2438, 138 L.Ed.2d 198 (1997). Those factors are: "[1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson*, 481 F.2d at 1033. The Officers' use of force as to Tierney and Philip Newton was de minimis, necessary, appropriate, and benign.

**CONCLUSION**

Accordingly, we vacate the district court's order denying summary judgment to defendants and remand for entry of summary judgment in favor of defendants on plaintiffs' federal claims. Since the federal claims must be dismissed, we also direct dismissal of the state claims for lack of jurisdiction. *See, e.g., Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir.1996); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir.1995).

---

7. Plaintiffs assert an emotional distress claim based upon force used against Patrick Newton, but such a claim would give rise only to a common law tort, not to a constitutional violation. *See Grandstaff v. City of Borger*, 767 F.2d 161, 172–73 (5th Cir.1985).