12-4959-cv
Royal Crown Day Care LLC v. Department of Health and Mental Hygiene of the City of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: October 3, 2013          Decided: March 19, 2014)

Docket No. 12-4959-cv

_____

ROYAL CROWN DAY CARE LLC,

*Plaintiff-Appellee,*

v.

DEPARTMENT OF HEALTH AND MENTAL HYGIENE OF THE CITY OF NEW YORK, FRANK CRESCIULLO, Individually and as Assistant Commissioner of the Department of Health and Mental Hygiene of the City of New York, JAMES MORRISS, Individually and as Director of Field Operations and Regulatory Enforcement for the Bureau of Child Care, AURORA VILLAREAL, Borough Manager, Individually and in Her Official Capacity,

*Defendants-Appellants.*[*]

_____

---

[*] The Clerk of Court is directed to amend the caption as above.

Before: POOLER, LYNCH, and DRONEY, *Circuit Judges*.

Appeal from the July 20, 2012 Memorandum and Order of the United States District Court for the Eastern District of New York (Margo K. Brodie, *J.*), denying the individually named Defendants-Appellants' motion for summary judgment on qualified immunity grounds and the November 20, 2012 Memorandum and Order denying Defendant-Appellants' motion for reconsideration. The district court did not err in denying the individually named Defendants-Appellants' motion for summary judgment on qualified immunity grounds and their subsequent motion for reconsideration. Accordingly, we AFFIRM the orders of the district court.

AFFIRMED.

_____

SALVATORE JOHN BATE, Staten Island, N.Y., *for Plaintiff-Appellee*.

VICTORIA SCALZO, Assistant Corporation Counsel (Michael A. Cardozo, Corporation Counsel of the City of New York, Kristin M. Helmers, Louise A. Moed, Diana Murray, *on the brief*), New York City Law Department, New York, N.Y., *for Defendants-Appellants*.

POOLER, *Circuit Judge*:

Defendants-Appellants Department of Health and Mental Hygiene of the City of New York ("DOHMH"), Frank Cresciullo, James Morriss, and Aurora Villareal (collectively, "defendants") appeal from the July 20, 2012 Memorandum and Order of the United States District Court for the Eastern District of New York (Margo K. Brodie, *J.*), denying the individually named defendants' motion for summary judgment on qualified immunity grounds. Defendants also appeal from the November 20, 2012 Memorandum and Order of the district court denying their motion for reconsideration. We conclude that the individually named defendants have not established that they are entitled to qualified immunity as a matter of law and, therefore, the district court did not err in denying their motion for summary judgment and motion for reconsideration. Accordingly, the orders of the district court are AFFIRMED.

## BACKGROUND

Plaintiffs below, Royal Crown Day Care LLC ("Royal Crown"), Boris Rey, Irina Gafina, and Irina Pritsker, brought this case under 42 U.S.C. § 1983. They alleged, among other things, that defendants violated their First Amendment and substantive due process rights by closing down Royal Crown's day care facility

in retaliation for a letter of complaint that Royal Crown sent to a New York State senator.

We set forth only a limited set of facts relevant to this interlocutory appeal, which are presented in the light most favorable to Royal Crown, the party opposing summary judgment. *See Tierney v. Davidson*, 133 F.3d 189, 192 (2d Cir. 1998). Royal Crown is a day care center that was formed under the laws of New York in 2006. It was issued a permit by DOHMH on August 20, 2009, to perform child care services. In July of 2009, a rival day care owner and operator named Liudmila Umarov told Royal Crown that she had connections at DOHMH and that if Royal Crown did not pay her money she would have it "shut down." Joint App'x at 416. Boris Rey, who was an owner/manager at Royal Crown and originally a plaintiff in this case, informed defendant Aurora Villareal, a manager at DOHMH, about Umarov's threat. Villareal was subsequently indicted for conspiracy to commit mail fraud and honest services fraud, and pleaded guilty to that charge. The factual basis for Villareal's plea was that she had accepted payments from Umarov in exchange for taking official actions to benefit day care centers that were affiliated with Umarov.

4

Royal Crown sent an undated letter to State Senator Martin Golden seeking his help on various issues, alleging: (1) that rival day care centers were trying to harm Royal Crown's business; (2) that the Health Department was harassing Royal Crown and threatening to shut it down; and (3) that there was corruption in the Health Department. Senator Golden's office forwarded Royal Crown's letter to DOHMH on June 7, 2010. On June 10, 2010, defendant James Morriss, a director at DOHMH, wrote an internal memorandum instructing four DOHMH employees to inspect Royal Crown and write reports with the objective that their findings would be used in DOHMH's consideration of whether to revoke Royal Crown's licenses and permits. On June 11 and 14, 2010, DOHMH conducted inspections of Royal Crown. On June 15, 2010, defendant Frank Cresciullo, an assistant commissioner at DOHMH, notified Royal Crown that it was required to cease operations based on violations of the New York City Health Code. *See* New York City, N.Y., Rules, tit. 24 (the "Health Code").

In the district court, defendants moved for summary judgment on all of plaintiffs' claims, and plaintiffs cross-moved for summary judgment on their procedural due process claim. In an oral decision, the district court: (1) granted defendants' motion for summary judgment on plaintiffs' procedural due process

claim, unconstitutional taking claim, state law claims, and all the claims against the Board of Health of the City of New York; (2) denied defendants' motion for summary judgment on plaintiffs' First Amendment retaliation claim and on qualified immunity grounds; (3) denied plaintiffs' motion for summary judgment on their procedural due process claim; and (4) reserved decision on (a) defendants' motion for summary judgment on plaintiffs' substantive due process claim and (b) whether the individual plaintiffs had standing. *See Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of N.Y.*, No. 10-CV-5442 (MKB), 2012 WL 2992124, at *1 & n.1 (E.D.N.Y. July 20, 2012) ("*Royal Crown I*"). In a written decision, the district court denied defendants' motion for summary judgment on plaintiffs' substantive due process claim, and concluded that the individual plaintiffs did not have standing. *See id.* at *4–5. Accordingly, the only plaintiff before us is Royal Crown.

Defendants moved for reconsideration of the portions of the aforementioned decisions that were adverse to them, and the district court denied that motion. *See Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of N.Y.*, No. 10-CV-5442 (MKB), 2012 WL 5873331, at *3 (E.D.N.Y. Nov. 20, 2012).

The individually named defendants—Cresciullo, Morriss, and Villareal—appeal from the district court's denial of their motion for summary judgment on qualified immunity grounds and from the denial of their motion for reconsideration. DOHMH requests that our Court dismiss the claims against it if we conclude that the individual defendants are entitled to qualified immunity.

**DISCUSSION**

**I. Appellate Jurisdiction and Standard of Review**

We first must address our jurisdiction to hear this interlocutory appeal of the district court's denial of Cresciullo, Morriss, and Villareal's motion for summary judgment on qualified immunity grounds.

"Although the denial of a motion for summary judgment is generally not appealable, an exception applies where, as here, the challenged denial is based on the rejection of qualified immunity." *DiStiso v. Cook*, 691 F.3d 226, 239 (2d Cir. 2012). However, "[s]uch a denial is appealable only to the extent that resolution of the qualified immunity defense turns on issues of law." *Id.* Accordingly, a defendant who raises a qualified immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515

7

U.S. 304, 319–20 (1995); *accord DiStiso*, 691 F.3d at 239. That is to say, "'determinations of evidentiary sufficiency at summary judgment are not immediately appealable . . . if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred.'" *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996) (alteration omitted) (ellipsis in *Salim*) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).

"This does not mean that a district court can fully insulate a qualified immunity denial from appellate review simply by declaring that genuine issues of fact exist." *DiStiso*, 691 F.3d at 239 (brackets and internal quotation marks omitted). Rather, where a district court denies a defendant qualified immunity, there is appellate jurisdiction over that defendant's interlocutory appeal if the defendant "contests the existence of a dispute or the materiality thereof as a matter of law, or contends that he is entitled to qualified immunity even under plaintiff's version of the facts." *Id.* (internal quotation marks omitted).

In this case, the district court denied the individual defendants' motion for summary judgment based on the existence of genuine disputes of fact. With respect to Royal Crown's First Amendment retaliation claim, the district court concluded that "there is an issue of fact as to whether defendants retaliated

8

against plaintiff[] by suspending and then revoking plaintiff's day care permit because of the letter plaintiff[] wrote to Senator Golden." Special App'x at 60; *see also Royal Crown I*, 2012 WL 2992124, at *3 ("As the Court held at the July 13 argument, Plaintiffs have provided sufficient evidence from which a jury could infer that Defendants' suspension of their day care permit was motivated by retaliatory animus."). With regard to Royal Crown's substantive due process claim, the court decided that "a jury could reasonably find that Defendants' decision to suspend Royal Crown's permit was motivated by retaliatory animus and was therefore irrational." *Royal Crown I*, 2012 WL 2992124, at *4.

On this interlocutory appeal, we do not have jurisdiction to review those portions of the district court's decisions in which it concluded that there was sufficient evidence for a reasonable jury to find that defendants acted based on retaliatory animus. *See Johnson*, 515 U.S. at 313, 319–20; *DiStiso*, 691 F.3d at 239; *Salim*, 93 F.3d at 89. However, the individual defendants argue on appeal that, even accepting as true Royal Crown's allegations concerning defendants' retaliatory motivation, they are entitled to qualified immunity as a matter of law. Defendants maintain that, notwithstanding their retaliatory motivation, they did not violate Royal Crown's constitutional rights because the Health Code

9

mandated that defendants close down Royal Crown based on the existence of "critical violations at the daycare center." Defs.' Sept. 30, 2013 Letter at 2. That is to say, defendants' position is that their motivation for closing down Royal Crown is immaterial. Accepting Royal Crown's version of the facts, we have jurisdiction to hear defendants' legal arguments on this interlocutory appeal. *See DiStiso*, 691 F.3d at 239; *Tierney*, 133 F.3d at 194; *Salim*, 93 F.3d at 89–91. Our standard of review in these circumstances is de novo. *See DiStiso*, 691 F.3d at 240.

**II. Defendants' Qualified Immunity Defense**

"The defendants are entitled to qualified immunity if they can establish either that (1) 'a constitutional right was [not] violated' or (2) 'the right was [not] clearly established.'" *Bailey v. Pataki*, 708 F.3d 391, 404 (2d Cir. 2013) (alterations in *Bailey*) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Part of this analysis consists of an inquiry into "whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier*, 533 U.S. at 202).[1]

---

[1] The Court in *Bailey* acknowledged that there is some tension in our decisions concerning "whether the 'reasonable officer' inquiry is part of step two—the 'clearly established' prong—or whether it is a separate, third step in the

10

As noted earlier, defendants primarily argue on appeal that they are entitled to qualified immunity because, even accepting as true Royal Crown's allegations about defendants' retaliatory motivation, the closure of the day care facility was mandated by the Health Code. Therefore, defendants' argument goes, their motivation in closing the facility was immaterial and they did not violate Royal Crown's constitutional rights. We find defendants' argument unavailing.

Royal Crown "can prove First Amendment retaliation even if the measures taken by [defendants] were otherwise justified." *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006). That is to say, the fact that defendants in this case may have been justified in closing down Royal Crown based on their regulatory responsibilities to enforce the Health Code does not insulate them from being "subject to a claim of improper motive," if defendants retained some discretion in how they performed their regulatory enforcement functions. *Id.* at 153.

---

analysis." 708 F.3d at 404 n.8. In line with the approach in *Bailey*, we need not resolve that debate because under either formulation defendants here are not entitled to qualified immunity. *See id.*

Contrary to defendants' argument, they did have some discretion in deciding whether to close down Royal Crown or take other action with regard to any violations of the Health Code that they found at plaintiff's facility. Defendants assert that Section 47.01(k) of the Health Code required them to shut down Royal Crown because Rey, who was an owner/manager at Royal Crown, admitted that he did not have the money to remedy some of Royal Crown's violations. Section 47.01(k) provides that certain serious violations constituting "imminent or public health hazards . . . require the Commissioner or designee to order [their] immediate correction or to order the child care service to cease operations immediately and institute such corrective action as may be required by the Department or provided by this Code." New York City, N.Y., Rules, tit. 24, Health Code, § 47.01(k). Notwithstanding defendants' interpretation of Rey's comment about Royal Crown's inability to remedy certain violations based on its financial situation, under Section 47.01(k) defendants had the discretion to "order [the] immediate correction" of Royal Crown's violations, rather than requiring it to cease operations. *Id.*[2] Defendants' exercise of their discretion in deciding to

---

[2] To the extent that defendants argue that Section 47.77(a) of the Health Code mandated the closure of Royal Crown, their contention is belied by the discretionary language of that provision. Section 47.77(a) states that in certain

12

close down Royal Crown means that they can be held liable on plaintiff's claims that defendants violated Royal Crown's First Amendment and substantive due process rights by acting based on improper motive. *See Beechwood Restorative Care Ctr.*, 436 F.3d at 153.[3]

On a motion for summary judgment, a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To survive summary judgment on a section 1983 First Amendment retaliation claim a plaintiff must demonstrate that he engaged in protected speech, and that the speech was a substantial *or motivating factor* in an adverse decision taken by the defendant." *Beechwood Restorative Care Ctr.*, 436 F.3d at 152 (emphasis added). In *Beechwood Restorative Care Center*, we vacated the district court's grant of summary judgment to certain defendants in part based on

---

serious circumstances "the Commissioner *may* order [a] child care service to close and to discontinue operations." New York City, N.Y., Rules, tit. 24, Health Code, § 47.77(a) (emphasis added).

[3] While *Beechwood Restorative Care Center* concerned, among other things, a claim of First Amendment retaliation, we see no reason why the logic in that case should not apply to Royal Crown's substantive due process claim which, as discussed below, can also be proved by showing that defendants acted based on unlawful animus. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 785–90 (2d Cir. 2007).

evidence that those defendants were "motivated by an intent to punish the [plaintiff] for exercising First Amendment rights of speech and petition." *Id.* at 154. Thus, defendants' motivation here for closing down Royal Crown just days after receiving the letter to Senator Golden is material to Royal Crown's First Amendment retaliation claim.

Under the law governing substantive due process, Royal Crown has to prove that: (1) it had a valid property interest in its permit to operate a day care center; and (2) "defendants infringed on that property right in an arbitrary or irrational manner." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007). Royal Crown can satisfy the second prong of that analysis by showing that defendants acted based on unlawful animus. *See id.* at 785–90 (concluding that evidence of a defendant's racial animus can allow a plaintiff's substantive due process claim to survive a motion for summary judgment). Accordingly, defendants' motivation is also material with respect to Royal Crown's substantive due process claim.

In sum, defendants are not entitled to qualified immunity solely because closing down Royal Crown may have been justified under the Health Code.[4] Defendants' motivation in closing down Royal Crown is material to Royal Crown's First Amendment and substantive due process claims, and we do not have jurisdiction to consider whether the dispute about defendants' motivation was genuine. The existence of that genuine dispute of material fact with respect to defendants' violations of Royal Crown's First Amendment and substantive due process rights precludes the entry of summary judgment on behalf of defendants unless they can show that their action was objectively legally reasonable or that the rights they violated were not clearly established. *See Bailey*, 708 F.3d at 404 & n.8.

Properly assuming on this interlocutory appeal that defendants retaliated against Royal Crown for speech protected by the First Amendment, defendants'

---

[4] In support of defendants' argument that they are immune from suit because they were mandated to close Royal Crown based on the Health Code, defendants rely on cases involving allegedly retaliatory arrests and prosecutions where there existed probable cause for the government action. *See, e.g.*, *Reichle v. Howards*, 132 S. Ct. 2088, 2091 (2012); *Mozzochi v. Borden*, 959 F.2d 1174, 1175, 1180 (2d Cir. 1992). Defendants' reliance on those cases is unpersuasive because this Court has concluded that cases involving allegedly retaliatory arrests "do not extend . . . to other variations of retaliation claims." *Blue v. Koren*, 72 F.3d 1075, 1083 n.5 (2d Cir. 1995).

15

action was not objectively reasonable. Royal Crown's First Amendment and substantive due process rights to be free from retaliation and irrational government action in response to its letter to Senator Golden were clearly established at the time that defendants closed down plaintiff's day care facility. *See Beechwood Restorative Care Ctr.*, 436 F.3d at 153–54 (holding that employees of a regulatory agency can be liable under the First Amendment for allegedly retaliating against a regulated entity in response to the regulated entity's complaints about the regulator's policies and practices); *Cine SK8, Inc.*, 507 F.3d at 785–90 (holding that defendants could be liable on a substantive due process claim for amending the plaintiff's permit based on alleged racial animus). Accordingly, defendants are not entitled to summary judgment on the basis of qualified immunity.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's Memorandum and Order denying the individual defendants' motion for summary judgment on qualified immunity grounds, and its Memorandum and Order denying those defendants' motion for reconsideration.