18-242-cv
*Shakir v. Stankye*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of March, two thousand twenty.

Present:
> DENNIS JACOBS,
> PETER W. HALL,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*.

_____

ANWAR SHAKIR, SR.,

> *Plaintiff-Appellee*,

v.                                                          18-242-cv

CHARLES STANKYE, III,

> *Defendant-Appellant.*[*]

_____

For Plaintiff-Appellee:          NOAM BIALE, Sher Tremonte LLP, New York, NY

For Defendant-Appellant:     PATRICK D. ALLEN, Karsten & Tallberg, LLC, Rocky Hill, CT

---

[*] The Clerk is respectfully requested to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the District of Connecticut (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Plaintiff-Appellee's motion to dismiss the appeal is **DENIED**, the judgment of the district court is **REVERSED**, and the case is **REMANDED** to the district court with an instruction to dismiss.

Defendant-Appellant Charles Stankye, III ("Stankye"), a detective of the Derby, Connecticut Police Department ("DPD"), appeals from a January 5, 2018 order of the United States District Court for the District of Connecticut (Hall, *J.*), denying in part Stankye's motion for summary judgment on qualified immunity grounds. Plaintiff-Appellee Anwar Shakir, Sr. ("Shakir") brought the underlying suit against Stankye pursuant to 42 U.S.C. § 1983, alleging that Stankye violated his constitutional rights by conducting a warrantless search of his home and subjecting him to unconstitutional conditions of confinement. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*     \*     \*

**I. Shakir's Warrantless Search Claim**

On February 6, 2009, pursuant to an arrest warrant, Stankye and five other police officers arrested Shakir at his home on charges that Shakir had sexually abused the daughter of his former girlfriend, who had lived with Shakir until 2008. Before his arrest, Shakir remained inside his home for between fifteen and twenty minutes as the officers repeatedly knocked on the door. Following Shakir's arrest, Stankye secured Shakir in a police cruiser and asked him for the location of his son, A.S., who had been living with Shakir's mother pursuant to an agreement with the Connecticut Department of Children and Families ("DCF") pending further investigation into the

2

sexual abuse charges against Shakir. Stankye had already learned from A.S.'s school that the child was not there. Shakir refused to provide A.S.'s whereabouts.[1] Unable to locate A.S. or confirm his wellbeing, the officers entered Shakir's home, found A.S. inside, and escorted him out. In the instant suit, Shakir alleges that this warrantless search violated his rights under the Fourth Amendment. Stankye moved for summary judgment, arguing that exigent circumstances justified the search and entitle him to qualified immunity as a matter of law. The district court denied Stankye's motion, and he now appeals.

We review a district court's denial of a summary judgment motion based on a defense of qualified immunity *de novo*. *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). On interlocutory appeal, we may assess the availability of qualified immunity only "on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996).

Qualified immunity protects government officials from liability for civil damages unless a plaintiff has pleaded "facts showing (1) that the officer violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotation marks omitted). The "dispositive inquiry" is "whether it would have been clear to a reasonable officer in the agents' position that their conduct was unlawful in the situation they confronted." *Id.* at 758 (internal quotation marks and alterations omitted). We exercise particular caution before rejecting an officer's claim to qualified immunity in the Fourth Amendment context, in which "'it is sometimes difficult for an officer to determine

---

[1] Earlier, Shakir's mother had told Stankye over the phone that A.S. was with her. Stankye requested that she bring A.S. to Shakir's residence so that he could confirm A.S.'s whereabouts and wellbeing, but she had not done so by the time Stankye arrested Shakir and secured him in a police cruiser.

3

how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (alteration omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). As such, a plaintiff attempting to overcome an officer's qualified immunity must generally "'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (*per curiam*)).

Shakir points to no such case here, and we conclude that Stankye's warrantless search did not violate any clearly established right. Although warrantless searches of a person's home are presumptively unreasonable, *United States v. Simmons*, 661 F.3d 151, 156–57 (2d Cir. 2011), "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury," *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). In evaluating an officer's conduct, we look "to the circumstances then confronting [him], including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." *Tierney v. Davidson*, 133 F.3d 189, 196–97 (2d Cir. 1998) (internal quotation marks omitted). We conclude that the circumstances here were such that Stankye could reasonably believe that A.S. was inside Shakir's home and in need of assistance, a sufficient basis to conduct a warrantless search. *Cf. Tierney*, 133 F.3d at 198 ("[I]t may have been a dereliction of duty for [the officer] to have left the premises without ensuring that any danger had passed. And [he] could not tell that the danger had passed unless he found the other participant in the dispute.").

Shakir's refusal to provide A.S.'s location—along with A.S.'s absence from school—supported Stankye's reasonable belief that A.S. was inside the home. *See Batt v. Buccilli*, 725 F. App'x 23, 26 (2d Cir. 2018) (finding qualified immunity where police searched a home after an

elderly person's caretaker denied his family access and refused to confirm his wellbeing to officers). It was likewise reasonable for Stankye to believe that A.S. was in need of aid. As a preliminary matter, Stankye had just arrested Shakir for child sexual abuse. Although Stankye did not have affirmative evidence that Shakir had been sexually abusing or otherwise endangering A.S., he knew about the DCF agreement pursuant to which A.S. was living away from his father. He also knew that A.S. had not yet undergone a forensic interview to indicate whether living with Shakir put him at risk. Given Stankye's justifiable suspicion that A.S. was in Shakir's residence when DCF had deemed it safest for him to live elsewhere, Stankye had reason to worry that whatever actions Shakir took before Stankye arrived, or during the fifteen to twenty minutes after the officers knocked on the door, had put A.S. in danger. *Cf. Tierney*, 133 F.3d at 198.

Regardless of whether Shakir had endangered A.S. prior to surrendering to police, moreover, Shakir could not have cared for A.S. following his arrest.[2] Shakir's refusal to answer Stankye's questions prevented him from determining that A.S. was supervised and safe, and Stankye reasonably could have believed that entering the home was the only way to confirm A.S.'s wellbeing and to remove him to a safe and appropriately supervised location.

Our determination that Stankye did not violate a clearly established right provides a sufficient basis to conclude that Stankye is entitled to summary judgment based on his qualified immunity defense. We therefore decline to address the merits of Shakir's Fourth Amendment

---

[2] Shakir argues that because his brother Rasheed was present when Stankye entered the home, Stankye had no basis to think that A.S., if inside, might be in danger. We disagree. Stankye did not know who Rasheed was, and he therefore had no way to know whether Rasheed posed a danger to A.S. or whether Rasheed was prepared to provide A.S. with adequate care. Even more importantly, at the time Rasheed opened the door, Stankye had no way to know whether A.S. was safe and sound to begin with. An objectively reasonable officer in Stankye's position may have doubted the safety of leaving A.S. alone in a home with an unidentified man, particularly when he had not yet determined the child's situation.

claim.[3] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Whether or not Stankye encountered truly exigent circumstances rising to the level that would justify a warrantless search, it cannot be said that "*every* reasonable official would have understood that what he [was] doing" constituted a violation. *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012) (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

### II. Shakir's Conditions of Confinement Claim

According to Shakir, following his arrest and transportation to DPD headquarters, Stankye escorted him to a holding cell and required that he strip to his underwear to verify that he was not armed. Shakir was then permitted to keep his slacks and possibly one shirt. Shakir alleges that Stankye taunted him about his high bail before leaving the room. Shakir also alleges that some time later, the air conditioning in the holding cell was turned up to maximum, causing him to become sick. Shakir did not see anyone adjust the air conditioning, but surmises that Stankye was responsible. For his part, Stankye claims that he did not know how to adjust the air conditioning in the holding cell, did not instruct anyone to do so, and was not aware of anyone having done so.[4] Shakir posted bond and left the police station later that day.

Shakir's *pro se* amended complaint alleges that his treatment at the DPD headquarters violated his Eighth Amendment right to freedom from cruel and unusual punishment, and the district court sustained that claim against a motion to dismiss. Although the Eighth Amendment provides no protection to pre-conviction detainees, *see Whitley v. Albers*, 475 U.S. 312, 318

---

[3] Shakir has also moved to dismiss the appeal for lack of jurisdiction, arguing that we could not determine that Stankye is entitled to qualified immunity without resolving disputed issues of fact in the officer's favor. Shakir's argument is without merit. Because Stankye is entitled to qualified immunity even on Shakir's version of the facts, we deny Shakir's motion to dismiss.

[4] The district court determined, and we agree, that Shakir's allegations are insufficient to create an issue of fact that Stankye was responsible for the temperature drop in Shakir's cell. Therefore, the only conduct at issue is Stankye's leaving Shakir in his cell partially dressed.

(1986), courts have a responsibility to interpret *pro se* filings liberally to "raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks omitted). Accordingly, in resolving Stankye's motion for summary judgment, the district court recharacterized Shakir's claims as arising under the Fourth Amendment and denied the motion on the basis that a jury could find that Stankye's alleged conduct was "objectively unreasonable." *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

On appeal, Stankye argues that to the extent this recharacterization at summary judgment was appropriate—and we conclude that it was, *see Willey*, 801 F.3d at 62—he is entitled to qualified immunity on this claim as well. Shakir protests that by failing to develop a qualified immunity defense before the district court, Stankye has waived his right to assert one here. We conclude that because the district court did not recharacterize Shakir's defense until after the parties had submitted their summary judgment briefing, Stankye has not waived his right to assert a qualified immunity defense. But we also conclude that in resolving that defense, the district court should have construed Shakir's conditions of confinement claim as arising under the Fourteenth Amendment rather than the Fourth. The district court applied the more restrictive Fourth Amendment standard because it could not determine whether the alleged conduct occurred before or after Shakir's arraignment, but we have treated even pre-arraignment conditions of confinement claims as arising under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment . . . ."); *id.* at 20 ("[The relevant detainment facility] was only a pre-arraignment holding facility . . . ."); *cf. Weyant v. Okst*, 101 F.3d 845, 856–57 (2d Cir. 1996) (analyzing a pre-arraignment arrestee's denial of medical treatment claim under the Fourteenth Amendment standard). Moreover, Shakir has clearly alleged

7

that Stankye taunted him about his high bail, indicating that Shakir had in fact been before a judge by the time of the challenged conduct.

Under the applicable Fourteenth Amendment standard, "[a] pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. The plaintiff "must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions," *id.*, either by intentionally imposing them or "recklessly fail[ing] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety," *id.* at 35.

We again conclude that Stankye's alleged conduct did not violate a clearly established right. Neither we nor the Supreme Court has ever held that brief exposure to cold is a constitutional violation. *Cf. Gaston v. Coughlin*, 249 F.3d 156, 164–65 (2d Cir. 2001) (collecting cases holding that *prolonged* exposure to bitter cold may establish a conditions of confinement claim under the Eighth Amendment). Even if it were, "the facts favorable to the plaintiff that the trial judge concluded the jury might find," *Salim*, 93 F.3d at 90, cannot support the conclusion that Stankye knew or should have known that Shakir's condition "posed an excessive risk to health or safety," *Darnell*, 849 F.3d at 35. Shakir has identified no evidence to show that Stankye adjusted the air conditioning in Shakir's cell or was aware that the air conditioning would be turned up after his departure. Thus, on the present facts, Stankye at most left Shakir in a cell after confiscating some

8

of his clothing. Stankye is therefore entitled to qualified immunity on Shakir's conditions of confinement claim as well.

We have considered Shakir's remaining arguments and find them to be without merit. Accordingly, we **DENY** Shakir's motion to dismiss the appeal, **REVERSE** the district court's denial of summary judgment in connection with Shakir's unlawful search and conditions of confinement claims, and **REMAND** the case to the district court with a direction to dismiss.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk