Jennifer A. MAGNUSON, Plaintiff,

v.

Officer Michael CASSARELLA,
et al., Defendants.

No. 92 C 0046.

United States District Court,
N.D. Illinois, E.D.

Nov. 12, 1992.

Jennifer A. Magnuson, pro se.

Terry L. McDonald, Connie R. Barba, Cook County State's Attorney's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Presently before the court is Officer Michael Cassarella's motion for summary judgment on the remaining counts (I, V, VI and a portion of II) of Jennifer A. Magnuson's *pro se* complaint. For the reasons set forth below, the motion is granted.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

### II. Background

Jennifer Magnuson's encounter with Officer Cassarella on August 15, 1991, was prompted by a phone call to the Cook County Police Department by Mary Miller, Mag-

nuson's neighbor. According to Miller's uncontradicted affidavit, while putting her daughter to bed shortly after 10:00 p.m., Miller heard screaming outside of her townhome. In an effort to provide assistance, Miller and her husband proceeded outside, where they encountered Jennifer, her baby, and the baby's teenage father, Manuel Pasillas. Recognizing that Magnuson was upset, Miller asked Jennifer if everything was "ok." Jennifer responded affirmatively, and the Millers returned to their home. Shortly thereafter, Jennifer knocked on the Millers' door and asked Miller to borrow a credit card to open the door to her house. Miller obliged, Jennifer used the credit card to open her front door and immediately returned the card. Moments later, the Millers heard loud screaming coming from within the Magnuson home. Given the baby's presence inside of the home, Miller phoned the police department.

Cassarella was the first patrol officer to respond to the report of a "domestic disturbance" at the Magnuson home. Upon approaching the Magnuson residence, Cassarella spotted Miller in her bathrobe moving toward his vehicle. Miller told Officer Cassarella that she had heard screams coming from the Magnuson's townhouse and that an infant was inside. As Cassarella stepped out of his squad car, he heard the screams and proceeded to the Magnuson dwelling to investigate. Cassarella entered the home through an open front door and an unlocked storm door. According to Cassarella, he encountered Pasillas in the living room holding an infant and, hearing screams from the back of the house, proceeded to what turned out to be the kitchen where he found Jennifer in a condition of hysteria. Cassarella tried to get Jennifer to explain what happened, but could not calm her down. In an effort to defuse the situation, Cassarella asked Jennifer to sit down in the living room so that she could see the baby while she talked with him and the other officers who had since arrived at the scene. Officer Cassarella asked both Pasillas and Jennifer to produce identification. According to Cassarella, Pasillas, obviously intoxicated, was unable to produce any identification. After some time and upon calming down, Jennifer produced identification from her purse or wallet on her behalf and on behalf of Pasillas.

Still unclear as to what had occurred that evening, Cassarella suggested that Jennifer and he talk in the kitchen, outside of Pasillas' presence. Jennifer asked for her baby, at which time Cassarella took the baby from Pasillas and handed it to Jennifer. Cassarella, Jennifer and her baby then moved into the kitchen. After talking to her for some time, Cassarella learned that Jennifer's father was away for the weekend. Additionally, Cassarella determined that Pasillas was her boyfriend and the baby's father, and had come to the Magnuson home drunk and had grabbed and shaken her. Cassarella observed red marks on Jennifer's face and arms. He told Jennifer that a neighbor had called him, and asked her to sign a domestic battery complaint against Pasillas. Jennifer refused. Meanwhile, another officer had asked Pasillas to call his parents, but he refused. Perceiving Pasillas as intoxicated and uncooperative, Cassarella refused to allow Pasillas to spend the night at the Magnuson home. Accordingly, Cassarella arrested Pasillas on charges of domestic battery and ordered that he be taken to the Rolling Meadows Police Station. Cassarella informed Jennifer that she would have to be interviewed and, hoping that she would be less intimidated and guarded in an office setting, asked her to come to the Rolling Meadows Station. Jennifer packed some supplies, retrieved a car seat for the baby, and rode to the station in a squad car. At the station, Cassarella informed Jennifer that he thought she needed help and that such help could be obtained through the legal system. He also told her that if she did not want help or seek counseling, and if such activity reoccurred, the Department of Children and Family Services would necessarily become involved. Thereafter, she was given a copy of the complaint and taken home.

Although admitting that she had argued with Pasillas, Jennifer denies that Pasillas had come over drunk, grabbed and shaken her. Jennifer admits that she had a red mark on one arm but, offering no explanation of how it got there, denies any further

red marks. Further, Jennifer claims that at no time after Cassarella entered her home was she hysterical or upset, but rather she was "a belligerent claimant" of her constitutional rights (*i.e.*, she repeatedly asked Cassarella to leave).

Perceiving the officer's actions as "over-zealous to the point of absurdity," Magnuson filed this civil rights action against the Cook County Sheriff's Police Department, Officer Michael Cassarella, nine unknown police officers, Cook County Board President Richard Phelan, and sixteen commissioners of the Cook County Board, alleging violations of the United States and Illinois Constitutions and of Illinois state law. In an order dated July 9, 1992, this court dismissed Magnuson's complaint on behalf of the Cook County Sheriff's Police Department, Board President Phelan and the sixteen commissioners of the Cook County Board. Additionally, we granted Officer Cassarella's motion to dismiss Counts II, IV, and VII–IX of Magnuson's complaint, as well as that portion of Count II alleging deprivation of property. Thus, only Counts I, V, VI and a portion of Count II remain against Officer Cassarella.

### III. Discussion

### A. Counts I and II

■ In Count I of her complaint, Magnuson alleges that Cassarella's actions constituted an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Count II alleges, in part, a deprivation of property interest without due process of law. Both of these claims appear to stem from Officer Cassarella's entry into the Magnuson home without a valid search warrant.[1]

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects individuals from "unreasonable searches and seizures." *See Florida v. Jimeno*, — U.S. —, —, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991); *Katz v.*

*United States*, 389 U.S. 347, 359, 88 S.Ct. 507, 515, 19 L.Ed.2d 576 (1967). A search or seizure conducted outside the judicial process, without prior approval by a magistrate or judge upon a showing of probable cause, is "*per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971); *see also United States v. Bennett*, 908 F.2d 189, 192 (7th Cir.), *cert. denied*, 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). "Exigent circumstances exist when there is a reasonable belief by police that their safety or the safety of others may be threatened." *United States v. Ware*, 914 F.2d 997, 1000–01 (7th Cir.1990) (citing *United States v. Dowell*, 724 F.2d 599, 602 (7th Cir.), *cert. denied*, 466 U.S. 906, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984)); *see also Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) ("Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.").

The totality of the circumstances confronting Officer Cassarella support a finding of exigent circumstances in the instant case. Cassarella arrived at the Magnuson home in response to a call from a neighbor who reported a domestic disturbance in progress. Cassarella himself heard screams coming from the Magnuson home, and was informed at the scene by the neighbor that an infant was involved. There is no question that a reasonable police officer faced with the situation encountered by Cassarella would believe that entry into the home was necessary to protect the safety of others. Indeed, as noted by Officer Cassarella "[t]his type of situation has the possibility of an explosive and sudden eruption of violence, sometimes even

---

1. As noted by Officer Cassarella, Magnuson's complaint is vague as to which facts support each of her claims. Respecting Counts I and II, it is equally conceivable that Magnuson's claims are premised on her interview at the Rolling Meadows Police Station. However, the facts as presented in Magnuson's affidavit make clear that she voluntarily consented to the interview at the station. As such, Cassarella's actions in taking Magnuson to the station do not constitute a violation of Magnuson's constitutional rights.

leaving the police, as well as the residents as victims." Further, exigent circumstances do not end merely because the victim indicates that she is no longer in danger. That is a determination for the officer to make independently in light of the totality of the circumstances. As such, the exigent circumstances in this case were sufficient to allow Cassarella's continued investigation of Magnuson's screaming as well as the initial warrantless entry. Consequently, we grant Cassarella's motion for summary judgment on Count I and on the remaining portion of Count II.

### B. Counts V and VI

In Counts V and VI, Magnuson asserts claims against Officer Cassarella for assault and battery respectively. In support of her claims, Magnuson points to Cassarella's action of lifting her shirt sleeve while questioning her about injuries she may have sustained during her altercation with Pasillas. Assuming that such conduct in fact constitutes a battery under Illinois law, and that she has demonstrated a "reasonable apprehension" of such battery, *see Parrish v. Donahue*, 110 Ill. App.3d 1081, 1083, 66 Ill.Dec. 860, 862, 443 N.E.2d 786, 788 (3d Dist.1982), Magnuson nonetheless cannot prevail on either Counts V or VI.

Under Illinois common law, the doctrine of public official immunity has developed out of the notion that "public officials should not be impeded from acting in ways that are in the public's best interest because of fears of personal liability." *Oppe v. State of Missouri*, 171 Ill.App.3d 491, 495, 121 Ill.Dec. 882, 885, 525 N.E.2d 1189, 1192 (4th Dist.), *appeal denied*, 122 Ill.2d 579, 125 Ill.Dec. 222, 530 N.E.2d 250 (1988). The doctrine as originally espoused provided that public officials are immune from liability where their conduct is a good faith exercise of discretionary, rather than ministerial, duties. *Mora v. State of Illinois*, 68 Ill.2d 223, 233–34, 12 Ill.Dec. 161, 166, 369 N.E.2d 868, 873 (1977); *People ex rel. Scott v. Briceland*, 65 Ill.2d 485, 502, 3 Ill.Dec. 739, 748, 359 N.E.2d 149, 158 (1976). However, as noted in *Oppe*, "this standard has been stretched and pulled to fit individual cases to the point that the immunity applies to the exercise of any governmental func-

tion, rather than a discretionary, nongovernmental function such as a maintenance person deciding where to drive a nail." *Oppe*, 171 Ill.App.3d at 495, 121 Ill.Dec. at 885, 525 N.E.2d at 1192 (citing *Madden v. Kuehn*, 56 Ill.App.3d 997, 14 Ill.Dec. 852, 372 N.E.2d 1131 (2d Dist.1978)). Respecting Officer Cassarella's action, there is no question that his response to the report of a domestic disturbance in progress and the manner in which he investigated Pasillas' potential battery of Magnuson were both uniquely governmental functions and discretionary. In the absence of any bad faith on the part of Officer Cassarella, the doctrine of public official immunity applies and Cassarella cannot be held personally liable to Magnuson. Accordingly, we grant Cassarella's motion for summary judgment on Counts V and VI of Magnuson's complaint.

### IV. Conclusion

For the reasons stated above, Officer Michael Cassarella's motion for summary judgment is granted. It is so ordered.