12

**The STATE of Ohio**

v.

**ARBINO.**

Hamilton County Municipal Court.

Nos. C 95 CRB 3042A, C 95 CRB 3042B.

Decided March 12, 1996.

*Melanie Reising,* Assistant City Prosecutor, for plaintiff.

*Hal Arenstein,* for defendant.

---

Elizabeth B. Mattingly, Judge.

On November 20, 1994, Cincinnati police placed defendant Jean Arbino under arrest for complicity to commit aggravated trafficking. The arrest took place in the hallway outside Arbino's apartment. After police had handcuffed Arbino, they noticed a young child, approximately eighteen months of age, standing in the

open doorway of her apartment. The evidence is undisputed that the child himself opened the door.

Officer Middendorf testified at trial that defendant Arbino told him that her child was alone in the apartment. Transcript of Proceedings for Motion to Suppress (Jan. 17, 1996), at 22–24. Officer Kelly testified that all defendant said about the child was that it was her baby and that she had to take care of him. Transcript of Proceedings for Motion to Suppress (Feb. 8, 1996), at 24.

The officers shouted into the apartment to determine if an adult capable of caring for the child was inside. They got no response to their inquiries. Meanwhile, probably due to the yelling, the young child ran into the apartment. The officer followed him inside and took his hand.

The police then looked through the entire apartment to locate adult supervision for the child on the premises. No such adult was located in the apartment.

While looking through the apartment for the purpose of determining whether the young child was alone in the apartment, the officers saw numerous cockroaches, and a partially decayed dead rat or mouse under the crib. They also observed the generally filthy and unsanitary condition of the premises. The police also saw three crack pipes: two on a counter next to the doorway through which they entered the apartment and another on the kitchen table. As a result of these observations, Arbino was charged with two misdemeanors, child endangering and possession of drug paraphernalia.

Defendant filed a motion to suppress, stating that the evidence against her was obtained from a warrantless search and seizure.

The issue now before this court is whether Officers Middendorf and Kelly properly entered defendant Arbino's apartment pursuant to the exigent circumstances and "plain view" exceptions to the general requirements of the Fourth Amendment.

■ The Fourth Amendment to the United States Constitution secures the right to be free from unreasonable searches and seizures. A warrantless search or seizure effected on premises in which the individual seeking to invoke the right has a reasonable expectation of privacy is *per se* unreasonable unless it falls within one of the recognized exceptions to the warrant requirement. *Payton v. New York* (1980), 445 U.S. 573, 586–587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 650–651 (citing *Coolidge v. New Hampshire* [1971], 403 U.S. 443, 474–475, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564, 587–588).

■ Defendant had a reasonable expectation of privacy in her residence. Evidence derived from a search or seizure effected in contravention of the Fourth

Amendment is subject to exclusion at trial. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

██ The touchstone of the Fourth Amendment is reasonableness. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148.

██ The exigent-circumstances exception to the requirement of a warrant applies when there exists a reasonable basis for the police to believe someone inside the premises needs immediate aid. *Parma v. Jackson* (1989), 58 Ohio App.3d 17, 568 N.E.2d 702; *State v. Willoughby* (1992), 81 Ohio App.3d 562, 611 N.E.2d 937. When the officers in question have reasonable grounds to believe that an emergency exists, they have a duty to enter the premises and investigate. *State v. Hyde* (1971), 26 Ohio App.2d 32, 55 O.O.2d 52, 268 N.E.2d 820; *State v. Applegate* (1994), 68 Ohio St.3d 348, 626 N.E.2d 942. In determining the reasonable belief of the officers, the facts and circumstances known to them are weighed. *State v. Robinson* (1995), 103 Ohio App.3d 490, 659 N.E.2d 1292.

██ As the United States Supreme Court has written in the seminal decision on the exigent-circumstances exception to the requirement of a warrant: "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300.

██ Applying these rulings to the case at bar, Officers Middendorf and Kelly were under a legitimate and reasonable belief that the eighteen-month-old child in question was in need of emergency assistance. The defendant expressed some concern for the child's safety, and the officers had received no response to their shouts into the apartment from the hallway.

The exigent circumstances here did not end when the officers took the child's hand. The dangers posed by leaving a child of such tender years alone in an apartment are considerable and potentially serious. The officers reasonably believed they were confronted with a situation in which the life and safety of the child would be compromised if the child was left alone in the apartment. Even after securing custody of the eighteen-month-old child, there was a continuing need to investigate to ensure the safety of the one child of which they were aware and others who might also be in the apartment. *United States v. Guarente* (D.Me.1993), 810 F.Supp. 350, 352–353; *United States v. Antwine* (C.A.8, 1989), 873 F.2d 1144, 1147. The exigent circumstances the officers found extended to a reasonable search of the premises to locate supervision for the child. *Magnuson v. Cassarella* (N.D.Ill.1992), 813 F.Supp. 1321, 1324.

Since a capable adult might be sleeping in another room in the apartment, the police had to walk through the entire apartment to determine whether there was an adult on the premises capable of caring for the child and ensuring his safety. The scope of their search did not exceed the exigency with which they were presented.

The court notes that municipal police are charged under R.C. 737.11 to "preserve the peace, protect persons and property." Under the duty and authority held by these police officers, they had a right to enter this private dwelling in response to what remained a crucial need. *Parma v. Jackson* (1989), 58 Ohio App.3d 17, 568 N.E.2d 702. There was no evidence presented at trial that the officers in question had any intent to locate contraband or detect illegal activity in taking these actions.

Moreover, at the time the officers walked through the apartment, they were unaware whether there were other unsupervised young children on the premises whose continued safety was imperiled by being alone in the apartment.

■ Once the officers were legally in the house, the discovery of the unsanitary conditions therein and the crack pipes was proper under the "plain view" exception to the rules regarding warrantless searches. The officers did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Once in the house, the unsanitary conditions and crack pipes were in plain view. The officers had lawful access to the apartment in order to locate adult supervision or confirm the lack thereof to ensure the safety of the child. The requirements of the "plain view" doctrine are satisfied here. Accordingly, the court holds that the officers were justified in observing the unsanitary conditions and seizing the crack pipes at issue here.

Defendant's motion to suppress is hereby denied.

So ordered.

*Motion denied.*