[Cite as *State v. Stoermer*, 2018-Ohio-4522.]


**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-93 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-546 |
| | : | |
| CASEY STOERMER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of November, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

KORT GATTERDAM, Atty. Reg. No. 0040434 and DAVID F. HANSON, Atty. Reg. No. 0059580, 280 Plaza, Suite 1300, 280 N. High Street, Columbus, Ohio 43215
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Casey Stoermer appeals from his convictions for having weapons under disability and for trafficking and possession of cocaine. A jury found Stoermer guilty of two sets of trafficking and possession charges—one set for cocaine found on his person when he was arrested in his residence and the other set for cocaine found in a car that

was searched pursuant to a search warrant. The trial court merged the trafficking and possession charges for each set, and merged the related firearm specifications, but it did not merge the charges resulting from the discovery of drugs in the two distinct places.

{¶ 2} On appeal, Stoermer makes several contentions. He contends that evidence should have been suppressed because the search that led to it was unlawful. Stoermer also contends that the trial court should have merged all of the trafficking and possession offenses and convicted him of only one trafficking and one possession offense. Lastly, he contends that trial counsel was ineffective in failing to object to references to his pretrial incarceration, in trying the weapons charge to the jury rather than the court, in eliciting prejudicial testimony, and in failing to object to opinion testimony.

{¶ 3} We find no merit in any of these contentions. Therefore, the judgment of the trial court is affirmed.

### I. Facts and Background

{¶ 4} Around 7 a.m. on June 21, 2016, law enforcement officers with the SOFAST task force (a unit run by the U.S. Marshals whose focus is arresting people with outstanding felony warrants) knocked on the door of Aaron Smith's home in Springfield, Ohio, to arrest him on an outstanding warrant. Smith let the officers into the house. There were two young children, two and three years old, sleeping on the living-room floor. Officers found a handgun under one child, which Smith admitted to hiding there. They asked Smith if there was someone in the house who could watch the children. Smith said that their mother was at work, and he did not want to bother her. He said that "Casey" (Stoermer) was upstairs and that Stoermer could watch them. The officers yelled upstairs several times asking Stoermer to come down. When no one responded, Officer Tyler

Elliott of the Springfield Police Division and other members of the task force went upstairs to find Stoermer. They saw him in the bedroom at the top of the stairs, standing at the foot of the bed. On the bed they saw a Kel-Tec 9-millimeter handgun. The officers were unaware that Stoermer had been living there. Officer Elliott had read an email about Stoermer and drug sales, and Elliott knew that Stoermer had a prior felony conviction, which barred him from possessing a firearm. The officers arrested Stoermer. They searched him and found $2,700 in cash and a baggie containing six grams of cocaine.

{¶ 5} Later that day, the officers obtained and executed a search warrant for the residence. In the bedroom where Stoermer had been arrested, they found a digital scale with residue on it, an empty "kilo wrapper," and 9-millimeter ammunition in an unlocked safe. They also found keys on the bed that opened a Honda Civic parked in the driveway. In the car, officers found Stoermer's state-issued identification, a pair of tennis shoes, four black socks, and a red Nike duffel bag. In the duffel bag, they found plastic sandwich bags, another pair of black socks, a receipt bearing Stoermer's name, a digital scale, cash, and over 240 grams of cocaine. Forensic tests on the socks revealed Stoermer's DNA on two of them.

{¶ 6} Stoermer was indicted on one count of having weapons under a disability; one count of trafficking and one count of possession for the cocaine found in the car; and another trafficking count and possession count for the cocaine found on his person; each count of trafficking and possession included a firearm specification. One trafficking charge also had a specification that the offense occurred in the vicinity of a juvenile. Stoermer moved to suppress the evidence obtained against him. A suppression hearing was held, and based on the evidence presented, the trial court overruled the motion to suppress.

The court found that the initial encounter, the subsequent search of Stoermer's person, and the execution of the search warrant were all constitutional.

{¶ 7} All of the charges were tried to a jury. Stoermer's trial counsel stipulated that Stoermer had a prior conviction that precluded him from possessing a firearm. Stoermer testified in his own defense. On cross-examination, Stoermer admitted that he had three prior drug-related felony convictions.

{¶ 8} The jury found Stoermer guilty on all charges and specifications. As indicated, at sentencing the trial court merged all the firearm specifications, merged the trafficking and possession offenses for the cocaine found in the car, and merged the trafficking and possession offenses for the cocaine found on Stoermer. The court sentenced him to a total of 18 years in prison.

{¶ 9} Stoermer appeals.

## II. Analysis

{¶ 10} Stoermer presents three assignments of error for our review. The first challenges the trial court's overruling of his motion to suppress. The second challenges the trial court's refusal to merge all the drug offenses as allied offenses. The third assignment of error claims that trial counsel rendered ineffective assistance.

## A. Motion to suppress

{¶ 11} The first assignment of error alleges:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED MR. STOERMER'S MOTION TO SUPPRESS HIS UNLAWFUL ARREST BY THE POLICE, AND THE EVIDENCE GATHERED FOLLOWING HIS UNLAWFUL ARREST BY THE POLICE, IN

VIOLATION OF MR. STOERMER'S RIGHTS UNDER THE FOURTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10, 14, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 12} "Review of a trial court's ruling on a motion to suppress is 'a mixed question of law and fact.' We accept the trial court's factual findings as long as they are supported by competent, credible evidence. However, we review de novo the application of the law to these facts." (Citations omitted.) *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 13} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution prohibit unreasonable searches. "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). "[T]he Fourth Amendment protects citizens from only *unreasonable* government searches and seizures." (Emphasis sic.) *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 17, citing *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *see also Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (saying that the Fourth Amendment does not proscribe all police searches but only those that are unreasonable). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' " (Emphasis added in *Stuart*.) *Brigham City v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting *Scott v. United States*, 436 U.S. 128, 138,

98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). "Reasonable belief is assessed from the facts and circumstances known [to] the officers from their point of view." (Citation omitted.) *City of Dayton v. Johnson*, 2d Dist. Montgomery No. 17184, 1999 WL 55705, *3 (Feb. 5, 1999).

**{¶ 14}** Law enforcement officers must obtain a warrant before conducting a search unless the search falls within an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception is the "community-caretaking exception," "which courts sometimes refer to as the 'emergency-aid exception' or 'exigent-circumstance exception.' " *Dunn* at ¶ 15. These "community caretaking functions" are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Dombrowski* at 441. In other words, if law enforcement officers happen to be in an otherwise protected area while performing a community-caretaking function and see or discover evidence in furtherance of that function, it is not a constitutional violation, because the intrusion is reasonable.

*Lawful presence*

**{¶ 15}** Stoermer does not dispute that if the officers were lawfully upstairs, they could lawfully arrest him. The handgun on the bed was in plain view, and Officer Elliott knew that Stoermer had a prior conviction that made it illegal for him to possess a firearm. And if the officers could arrest him, then their search that turned up the baggie of cocaine in his pocket was lawful incident to that arrest. There is no dispute that the officer's intrusion into the upstairs to look for "Casey" would be a "search" within the scope of the Fourth Amendment. The key question is whether the "search" violated the Fourth Amendment.

**{¶ 16}** When a young child's mother was arrested at her home in *State v. Arbino*,

83 Ohio Misc.2d 12, 677 N.E.2d 1273 (C.P.1996), the court found it reasonable for police officers to walk through the home to look for someone who could care for the child. Officers had arrested the defendant in the hallway outside her apartment, when they noticed an eighteen-month-old child, who had opened the door himself, standing in the open doorway of the apartment. The officers shouted into the apartment to see if there was someone inside who could care for the child. No one responded. The child ran back into the apartment, and an officer followed him inside and took his hand. The officers then looked through the entire apartment to see if anyone was inside who could watch the child. While they did not find anyone, they did find numerous cockroaches and a partially decayed rat or mouse under a crib, as well as crack cocaine pipes. These observations led to charges of child endangering and possession of drug paraphernalia. The defendant moved to suppress that evidence based on an unlawful search, but the court concluded that the officers "were under a legitimate and reasonable belief that the eighteen-month-old child in question was in need of emergency assistance." *Id.* at 15. The court noted that "[t]he defendant expressed some concern for the child's safety, and the officers had received no response to their shouts into the apartment from the hallway." *Id.* "The dangers posed by leaving a child of such tender years alone in an apartment," said the court, "are considerable and potentially serious. The officers reasonably believed they were confronted with a situation in which the life and safety of the child would be compromised if the child was left alone in the apartment." *Id.* "The exigent circumstances the officers found," the court concluded, "extended to a reasonable search of the premises to locate supervision for the child." *Id.*, citing *Magnuson v. Cassarella*, 813 F.Supp. 1321, 1324 (N.D.Ill.1992). The court found that "[t]he scope of their search did not exceed the

exigency with which they were presented." *Id.* at 16. "Since a capable adult might be sleeping in another room in the apartment," reasoned the court, "the police had to walk through the entire apartment to determine whether there was an adult on the premises capable of caring for the child and ensuring his safety." *Id.* at 16.

{¶ 17} We agree with the *Arbino* court's conclusion and rationale and conclude that the circumstances in this case allowed the officers to go upstairs to find "Casey." Smith was going to be arrested, so his children were going to be left unattended. The officers asked Smith if there was anyone who could care for the children. He told them that "Casey" was upstairs and that he could watch them. The officers called up the stairs for "Casey" to come down. They called several times, but no one came down or responded. Having been told by Smith that the person he wanted to watch two very young children was upstairs, the officers went up to make sure that the person was there and could watch the children. This action was entirely reasonable. Indeed, arguably, Smith gave his implied consent to this action.

{¶ 18} When the officers went upstairs to rouse the babysitter chosen by the children's father, they were performing a community-caretaking function. The trial court expressly found that "[t]he officers went up to the second floor of the house for the sole purpose of ascertaining whether or not there was anyone present who could watch over the welfare of the children in the home. Had the defendant responded to the officers' call and come down the stairs," said the court, "there would have been no need for the officers to go up to the second floor." There is little evidence that the "search" of the upstairs had anything to do with "the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Dombrowski*, 413 U.S. at 441, 93 S.Ct. 2523, 37 L.Ed.2d

706. Therefore, the officers' presence upstairs was reasonable and constitutional.

*Search of the car*

**{¶ 19}** After the officers arrested Stoermer, they obtained a search warrant for the house "and surrounding curtilage." In the room in which Stoermer was arrested, they found car keys on the bed that opened the Honda Civic parked in the home's driveway, just outside. In the car, officers found over 240 grams of cocaine as well as evidence linking the car and drugs to Stoermer. Stoermer argues that the search of the car was unlawful because it went beyond the scope of the search warrant. He points out that neither the warrant itself nor the supporting affidavit says anything about vehicles or car keys found in the residence, and Stoermer contends that the Civic was not parked within the residence's curtilage.

**{¶ 20}** "The curtilage of a house is the area immediately surrounding and associated with that residence." *State v. Dudley*, 2d Dist. Montgomery No. 21781, 2008-Ohio-6545, ¶ 7, citing *United States v. Oliver*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). We have held that " 'vehicles parked in a driveway or otherwise in immediate proximity to the house are part of the curtilage and properly searched when the search warrant specifies "curtilage." ' " (Citation omitted.) *State v. Simpson*, 2d Dist. Montgomery No. 19011, 2002 WL 441488, *2 (Mar. 22, 2002), quoting *State v. Amendola*, 71 Ohio Misc.2d 30, 34, 654 N.E.2d 196 (C.P.1995). Generally, "Ohio appellate courts have recognized that such a warrant [authorizing the search of curtilage] extends to permit search of motor vehicles located within the curtilage of the premises." (Citations omitted.) *State v. Ballez*, 6th Dist. Lucas No. L-10-1012, 2010-Ohio-4720, ¶ 13. "Indeed, courts in most jurisdictions say that vehicles found on the curtilage of a target premises

may be searched. 2 Wayne R. LaFave, *Search and Seizure*, Section 4.10(c) (5th Ed.2012) (citing numerous cases). 'The assumption [made by these courts] seems to be that a vehicle should be viewed in the same way as any other personal effects found on the described premises.' *Id.*" *State v. Nelms*, 2017-Ohio-1466, 81 N.E.3d 508, ¶ 10 (2d Dist.).

{¶ 21} We disagree with Stoermer's contention that the Civic was not parked within the residence's curtilage. Plainly, it was, and this means that the search of the car was within the scope of the warrant.

{¶ 22} Stoermer cites several cases that he says hold that a driveway like the one here is not part of a home's curtilage for Fourth Amendment purposes. None of those cases is helpful because each of the searches was warrantless.

{¶ 23} The trial court properly overruled Stoermer's motion to suppress. The first assignment of error is overruled.

### B. Merger of the drug offenses

{¶ 24} The second assignment of error alleges:

THE TRIAL COURT ERRED IN ORDERING CONSECUTIVE SENTENCES FOR CONVICTIONS ARISING FROM THE SAME CONDUCT, PURSUANT TO R.C. § 2941.25 FOR SENTENCING PURPOSES. SAID ERROR VIOLATED STOERMER'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 25} Stoermer was found guilty on two counts of trafficking and on two counts of

possession: one count of each was based on the cocaine found on Stoermer when he was arrested, and one count of each was based on the cocaine later found in the car. The trial court merged the two offenses for the cocaine found on Stoermer's person and merged the two offenses for the cocaine found in the car, but the court did not merge the offenses related to the 6 grams found on Stoermer with the 240 grams found in his car. Stoermer argues that the trial court erred.

{¶ 26} By statute, "[w]here the defendant's conduct * * * results in two or more offenses of the same or similar kind committed separately * * * the defendant may be convicted of all of them." R.C. 2941.25(B). The Ohio Supreme Court has explained that "the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses" if "the offenses were committed separately." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25.

{¶ 27} Stoermer cites several cases that he says show that his offenses were committed together and with the same animus. But as the State points out, in each of the cases Stoermer cites, the drugs were found in the same geographic location. For example, in one of the cited cases, *State v. Bradley*, 2015-Ohio-5421, 55 N.E.3d 580 (8th Dist.), the Eighth District emphasized the importance of the location in which the drugs were found and the fact that the offenses were based on the same drugs. The court concluded that, under the circumstances in that case, the defendant could not be sentenced separately for each individual package of cocaine. "Although separately packaged," said the court, "the cocaine found in [the defendant]'s possession was stored together, inside one large baggie. * * * The subject drugs were being transported at the same time and were discovered in the same location." *Id.* at ¶ 43.

{¶ 28} Here, the separately packaged cocaine was found in two geographically separate locations—Stoermer's person and the car—and at separate times as a result of separate searches. The cocaine was not being stored together, and it was being transported separately. Under these circumstances, we believe that the trial court properly concluded that the two sets of offenses were committed separately. Consequently, they were not allied offenses, and Stoermer may be convicted and sentenced for both sets of offenses.

{¶ 29} The second assignment of error is overruled.

### C. Claim for ineffective assistance of counsel

{¶ 30} The third assignment of error alleges:

APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 31} Stoermer argues that his trial counsel was ineffective for failing to object to references that he was in jail pending trial and to references that he had prior contacts with law enforcement. He also argues that counsel was ineffective for trying the charge of having weapons under disability to the jury instead of to the court. Lastly, Stoermer argues that counsel was ineffective for eliciting testimony about other bad acts and for failing to object to opinion testimony.

{¶ 32} "To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice." *Sexton v. Beaudreaux*, — U.S. —, 138 S.Ct.

2555, 2558, 201 L.Ed.2d 986 (2018), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show that counsel's performance was deficient, a defendant must show unreasonable conduct. *See id.* at 2559. "A defendant can establish prejudice by showing that but for counsel's errors, there exists a reasonable probability that the result of the trial would have been different." *State v. Beasley*, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 140, citing *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. Reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

*References to pretrial incarceration*

{¶ 33} Stoermer argues that trial counsel was ineffective for failing to object to testimony referring to the fact that he had been jailed for the charged offenses in this case and to testimony referring to his prior contacts with law enforcement. The following exchange from the testimony of Detective Collins contains the challenged testimony:

Q (by the Prosecutor). Now, also in your preparation for trial and your further investigation after you leave a residence, do you also pull jail calls or request that jail calls be pulled to listen to inmates while they're in jail?

A. On occasions we do, yes.

Q. Did you do that in this particular case?

A. Yes.

Q. I'm going to hand you what's been previously marked as State's Exhibit 86 and 86-A and identify those for us, please.

A. It's a CD-R and it's labeled Clark County Jail Inmate Calls and the name of Casey Stoermer with number 77712 with the dates of 6/21/16 to 6/25/16.

Q. Detective Collins, do you know what Casey Stoermer sounds like?

A. I'm familiar with his voice.

Q. * * * Now, Detective Collins, in preparation for this case you listened, as you previously mentioned, to jail calls, correct?

A. I listened to some of them, yes.

Q. And you were trying to see if there w[ere] any statements made inside those jail calls that may be incriminating?

A. Correct.

Q. Did you locate any type of evidence inside those jail calls?

A. There was one specific call.

* * * [The call was played.]

A. I've heard it before. So it sounded like he said, the person on the phone said that they had a little bit of powder and something about a firearm.

* * *

Q. And who was that person that you believed to be on that phone call?

A. It sounded like the Defendant.

(Tr. Vol. 1, 201-203).

{¶ 34} Stoermer argues that this testimony destroyed the presumption that he was innocent by suggesting to the jury that he must be guilty because he had already been

incarcerated for the offenses. It suggested, says Stoermer, that he was a dangerous person who needed to be locked up. He says that trial counsel should have objected to the testimony, moved for a mistrial, or at least requested a limiting instruction.

{¶ 35} Courts have held that verbal references to the jail status of a defendant are improper and potentially prejudicial because they erode the presumption of innocence, for the same reason that wearing prison or jail clothing does. *E.g.*, *State v. Watters*, 8th Dist. Cuyahoga No. 82451, 2004-Ohio-2405, ¶ 15-16 (concluding that it was improper for the prosecutor to ask a witness if he was aware that the defendant had been taken into custody at the time of the incident and if he knew whether the defendant had been in custody since that time). If there has been a reference to pretrial incarceration, the question then becomes whether the reference prejudiced the defendant. Courts have held that isolated comments from which it could be inferred that the defendant was in jail are not enough to show prejudice. *E.g.*, *United States v. Washington*, 462 F.3d 112, 1136-1137 (9th Cir.2006) (finding that "the impact of referring to a defendant's incarceration is not [as] constant as it is with prison garb"); *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 107, citing *Washington* (saying that one isolated comment is not enough, "as a single reference to appellant's custodial status does not have the same impact as wearing prison clothing throughout a trial"); *State v. Gaona*, 5th Dist. Licking No. 11 CA 61, 2012-Ohio-3622, ¶ 37 (saying that a possible inference from one isolated comment about pretrial incarceration is not enough to show prejudice).

{¶ 36} Here, the prosecutor did not explicitly ask, and Detective Collins did not explicitly say, that Stoermer had been in jail. Rather, the testimony was that there were calls made from jail, and that Stoermer was a party to one of those calls. The State says

that this testimony laid the foundation for a party-opponent admission—Stoermer's prior statement that he had "a little bit of powder." Regardless, we conclude it would be reasonable to infer from this testimony that Stoermer was the party in jail.

{¶ 37} But we cannot say that trial counsel was ineffective for not objecting. Not objecting to testimony is a reasonable trial strategy that counsel may use to avoid attracting a jury's attention to a matter. *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 68 (2d Dist.). Here, trial counsel could have withheld his objection because he thought it best not to draw the jury's attention to the matter of Stoermer's incarceration, particularly when the testimony did not clearly place him in jail. Even if counsel should have objected, "[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988); *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 144 (quoting the same). Stoermer must also show that the failure to object prejudiced his defense. He has not done that. Viewing Detective Collins's testimony in the context of all the evidence presented, we cannot say that there is a reasonable probability that the results of Stoermer's trial would have been different but for trial counsel's failure to object to this testimony.

*Trying the weapons charge to the jury*

{¶ 38} Stoermer next argues that counsel was ineffective for trying the charge of the having weapons under a disability to the jury rather than trying it separately to the court. The consequence of trying the charge to the jury, says Stoermer, was that the jury learned that he had a prior conviction for cocaine possession and that he was then forced to testify and to reveal that he had two more prior convictions.

{¶ 39} At a bench conference immediately after the testimony of the State's final witness, the State asked trial counsel if he would like to stipulate to Stoermer's prior drug convictions. Counsel said that he was going to ask Stoermer about the prior convictions when he testified. In the end, counsel agreed to stipulate that a prior conviction for cocaine possession put Stoermer under a disability to possess firearms from which he had not been relieved.

{¶ 40} " 'A recognized concern with trying a weapons under a disability charge to the jury is that, in a case where a defendant does not testify, the jury would learn about a defendant's prior conviction for the sole reason that the charge was tried before them and not a judge.' " *State v. Jones*, 2d Dist. Montgomery No. 24409, 2011-Ohio-5966, ¶ 11, citing *State v. Ingram*, 10th Dist. Franklin No. 06AP-984, 2007-Ohio-7136, ¶ 77. But when a defendant chooses to testify in his own defense, the defendant may be subject to cross-examination about his prior felony convictions. *State v. Sanders*, 2016-Ohio-4724, 66 N.E.3d 1239, ¶ 32 (2d Dist.), citing Evid.R. 609(A) and *State v. Wright*, 48 Ohio St.3d 5, 7, 548 N.E.2d 923 (1990) (noting that evidence of an accused's prior convictions may be admitted as bearing on credibility). "When a defendant's version of what occurred contradicts other witnesses, his credibility is at issue and it may be appropriate to impeach the defendant and to test his credibility by introducing testimony regarding his prior convictions." *State v. Owings*, 2d Dist. Montgomery No. 21429, 2006-Ohio-4281, ¶ 29; *Sanders* at ¶ 33 (quoting the same).

{¶ 41} Here, Stoermer testified about his prior convictions. However, the trial court gave the jury a limiting instruction stating that evidence of the prior convictions was admitted for the limited purposes of proving a legal disability and assessing his credibility

and could not be considered as character evidence or to indicate that he had acted in conformance with such character:

> The law and fundamental fairness prohibit you from drawing an inference that other crimes alleged to have been committed by the Defendant make it more likely that he committed the offenses for which he is on trial. * * *
>
> > * * *
>
> If you find that the State has proven prior convictions beyond a reasonable doubt, you may consider that evidence but only for the limited purposes of determining whether it proves that the Defendant was under a legal disability on the date in question and evaluating the Defendant's credibility as a witness. You may not consider it for purposes of drawing the aforementioned forbidden inference.

(Tr. Vol. II 140-141). Since a limiting instruction was given and Stoermer testified, we cannot conclude that trial counsel was ineffective for trying the weapons charge to the jury. *Compare Sanders* at ¶ 34 (concluding the same where a weapons charge was tried to the jury, the defendant testified, and the court gave a limiting instruction).

{¶ 42} Stoermer suggests that his choice to testify was the result of counsel's decision to try the weapons charge to the jury. But to show ineffective assistance, Stoermer must show that his free decision to testify was encumbered by trial counsel's decision. *See Sanders* at ¶ 35. Stoermer has not shown this. There is no evidence that his decision to testify was influenced by trial counsel's decision to try the weapons charge to the jury.

*Testimony about involvement with law enforcement and opinion testimony*

**{¶ 43}** Stoermer lastly argues that counsel was ineffective for eliciting testimony about his past involvement with law enforcement and for failing to object to opinion testimony. The alleged improper testimony was given by Detective Collins and concerned the jail-call recordings. This is the pertinent exchange during defense counsel's cross-examination of Collins:

Q. We heard an audio recording apparently of a jail call, and you identified

that as being Mr. Stoermer's voice?

A. I said it sounded like his voice, yes, sir.

Q. Sounded like his voice. Have you had the opportunity to have contact

with Mr. Stoermer in the past and interview him? Have you had the chance

in the past to interview one-on-one Mr. Stoermer?

A. Mr. Stoermer and I had a law enforcement relationship prior to this arrest

in 2010 where we spoke on the phone on a consistent basis.

(Tr. Vol. 1, 220-221). And this is the pertinent exchange on redirect:

Q. In the jail call you heard Mr. Stoermer admits to having a little bit of

powder, correct?

A. Correct.

Q. Is it surprising to you through your investigation that he would not admit

to having a lot of powder that was located in that vehicle?

A. No.

(*Id.* at 227).

**{¶ 44}** Stoermer says that the testimony elicited by counsel during the cross-

examination gave the jury the impression that he was in the drug business, making it more likely for the jury to believe that the drugs involved in this case were his. He also argues that counsel should have objected to the redirect testimony on grounds of relevance. Basically, Stoermer contends that Detective Collins told the jury that he was a drug dealer and that drug dealers do not admit possessing large quantities of drugs.

{¶ 45} Viewing Detective Collins's testimony in the aggregate, we conclude that Stoermer has failed to meet his burden of demonstrating that the testimony was actually prejudicial to his defense. Jurors could have inferred that Stoermer had been an informant in the past and had been of assistance to law enforcement. Even assuming that Collins's testimony was improper, we are unable to say that there is a reasonable probability that the result of the trial would have been different but for this testimony.

{¶ 46} The third assignment of error is overruled.

### III. Conclusion

{¶ 47} We have overruled the three assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies mailed to:

Andrew P. Pickering
Kort Gatterdam
David F. Hanson
Hon. Douglas M. Rastatter