[Cite as *State v. Stoermer*, 2019-Ohio-3804.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-546 |
| | : | |
| CASEY STOERMER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of September, 2019.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

KORT GATTERDAM, Atty. Reg. No. 0040434 and DAVID F. HANSON, Atty. Reg. No. 0059580, 280 Plaza, Suite 1300, 280 North High Street, Columbus, Ohio 43215
        Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant Casey Stoermer appeals the denial of his petition for postconviction relief. Stoermer contends he made a sufficient showing that trial counsel was ineffective. Thus, he claims the trial court erred by failing to hold a hearing on his petition.

**{¶ 2}** In our view, Stoermer failed to demonstrate that he was entitled to relief based upon his petition. Accordingly, the trial court did not err by denying his petition without a hearing. The judgment of the trial court is affirmed.

## I.     Facts and Procedural History

**{¶ 3}** In 2017, Stoermer was convicted for having weapons under disability as well as trafficking in and possession of cocaine. The underlying facts relevant to this appeal were set forth in our opinion affirming that conviction on direct appeal. *See State v. Stoermer*, 2d Dist. Clark No. 2017-CA-93, 2018-Ohio-4522, wherein we stated:

Around 7 a.m. on June 21, 2016, law enforcement officers with the SOFAST task force (a unit run by the U.S. Marshals whose focus is arresting people with outstanding felony warrants) knocked on the door of Aaron Smith's home in Springfield, Ohio, to arrest him on an outstanding warrant. Smith let the officers into the house. There were two young children, two and three years old, sleeping on the living-room floor. Officers found a handgun under one child, which Smith admitted to hiding there. They asked Smith if there was someone in the house who could watch the children. Smith said that their mother was at work, and he did

not want to bother her.  He said that "Casey" (Stoermer) was upstairs and that Stoermer could watch them.  The officers yelled upstairs several times asking Stoermer to come down.  When no one responded, Officer Tyler Elliott of the Springfield Police Division and other members of the task force went upstairs to find Stoermer.  They saw him in the bedroom at the top of the stairs, standing at the foot of the bed.  On the bed they saw a Kel-Tec 9-millimeter handgun.  The officers were unaware that Stoermer had been living there.  Officer Elliott had read an email about Stoermer and drug sales, and Elliott knew that Stoermer had a prior felony conviction, which barred him from possessing a firearm.  The officers arrested Stoermer. They searched him and found $2,700 in cash and a baggie containing six grams of cocaine.

Later that day, the officers obtained and executed a search warrant for the residence.  In the bedroom where Stoermer had been arrested, they found a digital scale with residue on it, an empty "kilo wrapper," and 9-millimeter ammunition in an unlocked safe.  They also found keys on the bed that opened a Honda Civic parked in the driveway.  In the car, officers found Stoermer's state-issued identification, a pair of tennis shoes, four black socks, and a red Nike duffel bag.  In the duffel bag, they found plastic sandwich bags, another pair of black socks, a receipt bearing Stoermer's name, a digital scale, cash, and over 240 grams of cocaine.  Forensic tests on the socks revealed Stoermer's DNA on two of them.

Stoermer was indicted on one count of having weapons under a

disability; one count of trafficking and one count of possession for the cocaine found in the car; and another trafficking count and possession count for the cocaine found on his person; each count of trafficking and possession included a firearm specification. One trafficking charge also had a specification that the offense occurred in the vicinity of a juvenile.

*Id.* at ¶ 4-6.

**{¶ 4}** Stoermer filed a motion to suppress in which he argued that the police had no warrant allowing them to enter his bedroom, and that there were no applicable exceptions to the warrant requirement. He also filed a supplemental motion seeking to suppress all evidence discovered during the execution of the later-obtained search warrant.

**{¶ 5}** A suppression hearing was conducted in July 2017. The State called two law enforcement officers who were present during Stoermer's arrest; they testified that it is common to find children in the homes where they execute arrest warrants. One of the officers testified that the general procedure in such a case is to ask the person taken into custody who they want to take care of the children. If there is another adult present at the home, the officers will ensure that the adult is not impaired and is capable of providing care. If no other adult is present, the officers will attempt to call a person designated by the adult being taken into custody. Both officers testified that upon arresting Smith and observing the children in the home, they had to decide how to deal with childcare. They testified that Smith identified Stoermer as the individual he wanted to watch the children. The defense did not present any testimony or evidence at the hearing.

**{¶ 6}** Following the hearing, the trial court overruled the motion to suppress. In its

decision, the trial court stated:

> The original entrance into the house was the result of executing an arrest warrant for Aaron Smith. The officers went up to the second floor of the house for the sole purpose of ascertaining whether or not there was anyone present who could watch over the welfare of the children in the home. Had the defendant responded to the officers' call and come down the stairs there would have been no need for the officers to go up to the second floor. Therefore, the officers' presence on the second floor was lawful under the circumstances. Since the firearm on the bed was in plain sight, it was properly seized and is admissible as evidence. The search of the defendant incident to the arrest was lawful and the cocaine seized from his pocket is admissible.
>
> Following the arrest of the defendant, a search warrant was issued for the residence and the surrounding curtilage, which would include a motor vehicle located within that area. The affidavit upon which the warrant was issued established probable cause and the ensuing search was kept within the bounds of the warrant. Therefore, the items seized as a result of the execution of the search warrant are admissible as evidence.

Dkt. No. 18.

{¶ 7} The case proceeded to trial, and the jury found Stoermer guilty of all charges and specifications. The trial court sentenced Stoermer to an aggregate prison term of 18 years.

{¶ 8} On direct appeal, Stoermer raised the argument that the trial court erred by

overruling his motion to suppress. We concluded that, based upon the evidence before the trial court, the officers "were performing a community-caretaking function" when they "went upstairs to rouse the babysitter chosen by the children's father[.]" *Stoermer*, 2d Dist. Clark No. 2017-CA-93, 2018-Ohio-4522, at ¶ 18. We affirmed Stoermer's conviction.

{¶ 9} In February 2019, Stoermer filed a petition for postconviction relief in which he argued that trial counsel was ineffective for failing to present Smith's testimony which, he claimed, would have resulted in the suppression of the evidence upon which his conviction was based. Stoermer specifically claimed that Smith did not inform the police that Stoermer would watch his children, that Smith did not consent to the entry into the bedroom and that, in any event, Smith had no authority to consent to the entry into the bedroom. These allegations were supported by evidence outside the record consisting of affidavits executed by Stoermer and Smith.

{¶ 10} In his affidavit, Smith averred that, once the officers placed him in handcuffs, they immediately began to ask him where Stoermer was located in the house. Smith further averred that he told the officers that Stoermer lived in the upstairs portion of the house and that Stoermer was asleep, and that he (Smith) requested permission to call the children's mother so that she could take physical custody of them. Smith further averred that the officers then proceeded upstairs where they encountered and arrested Stoermer. Finally, Smith stated that he did not tell the police he wanted Stoermer to watch the children, and that he informed Stoermer's attorney of these facts months before the hearing on the motion to suppress.

{¶ 11} Stoermer, in his affidavit, averred that the bedroom in which the officers

found him was his private living quarters for which he paid rent. He further averred that the door at the bottom of the stairwell leading to the room remained closed at all times in order to maintain his privacy and that the door was closed at the time the officers entered the home. Finally, Stoermer stated that his attorney was made aware of these facts but failed to present such facts at the suppression hearing or at any other relevant time.

{¶ 12} The trial court denied the petition. Stoermer appeals.

## II. Analysis

{¶ 13} Stoermer's sole assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY DISMISSING APPELLANT'S POST-CONVICTION PETITION AS APPELLANT PRESENTED EVIDENCE DEHORS THE RECORD CONTAINING SUFFICIENT OPERATIVE FACTS TO DEMONSTRATE THAT TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION, AND R.C. 2953.21.

{¶ 14} Stoermer contends that the trial court erred by dismissing his petition without a hearing because it alleged sufficient operative facts to demonstrate that trial counsel was ineffective.

{¶ 15} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 74, citing *Strickland*

*v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We review a trial court's decision regarding a postconviction relief petition under an abuse of discretion standard. *State v. Kuck*, 2d Dist. Darke No. 2017-CA-15, 2018-Ohio-3290, ¶ 7.

**{¶ 16}** A petitioner is not automatically entitled to a hearing on a petition for postconviction relief. *State v. Thrasher*, 2d Dist. Greene No. 06-CA-69, 2007-Ohio-674, ¶ 11. Instead, "[t]he trial court must first determine, upon examining the petition, any supporting affidavits and all the files and records pertaining to the case, that there are substantive grounds for relief." (Citations omitted.) *Id.* In *State v. Calhoun*, 86 Ohio St.3d 279, 283, 714 N.E.2d 905 (1999), the Supreme Court of Ohio stated that when making such a determination, a trial court has the discretion to weigh the credibility of any affidavits submitted with the petition. *Id.* at 284. In making such credibility determinations, the trial court should consider the following relevant factors:

(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*State v. Moore*, 99 Ohio App.3d 748, 754-756, 651 N.E.2d 1319 (1st Dist.1994). "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Calhoun* at 285, citing *Moore*.

{¶ 17} In reviewing Stoermer's petition and supporting affidavits, we note that, other than his own statement regarding rent, there was no evidence to support the claim that Stoermer was renting the upstairs bedroom from Smith. Further, Stoermer's trial testimony contradicted his subsequent claim that he paid rent for the room and that the room was his private living space. Specifically, Stoermer testified at trial that due to his prior convictions, he had problems obtaining his own housing and generally tended to "stay from place to place with somebody else." Trial Tr. Vol. II, p. 67. He testified that, at the time he was arrested, he had been sporadically staying with Smith for approximately one month, but that he did not stay there every day. He did testify that the room was "designated as [his] private area when [he] stayed there[,]" and that it was "understood" that no one was supposed to go up to the bedroom when he was asleep or wanted to be alone. *Id.* at p. 68 and 73. However, he also testified "[i]t's my bedroom, but it's not, you know." *Id.* at p. 76. Indeed, he admitted that other people possibly entered it when he was not present and that the homeowners had use of the room. We note that Stoermer made no mention during trial of paying rent for the room, nor did he produce other evidence of a rental agreement. Indeed, it is clear from the entirety of the trial transcript that Stoermer's defense theory was premised upon a claim that he was merely a guest in the Smith home and that other people who had access to the room had

left the gun in the bedroom, which precipitated his arrest.[1]

{¶ 18} In the present case, the same judge who presided over the trial also reviewed Stoermer's petition for postconviction relief and, thus, he was aware of the evidence presented at both the suppression hearing and the trial. Given that defense counsel's strategy, in which Stoermer actively participated, belied the claims made in his affidavit, we cannot say that the trial court abused its discretion in disregarding the affidavit testimony. Further, regardless of whether Smith identified Stoermer as the person he wanted to watch his children, it was not unreasonable for the police to conduct a search of the home to locate someone to tend the children. *Stoermer*, 2d Dist. Clark No. 2017-CA-93, 2018-Ohio-4522, ¶ 16-17. The need to locate care for the children was an exigent circumstance and the officers did not exceed that exigency by looking in the bedroom for an adult caretaker. *Id.*

{¶ 19} Based upon this record, we cannot say that the trial court abused its discretion by denying the petition without a hearing. Accordingly, Stoermer's assignment of error is overruled.

### III. Conclusion

{¶ 20} Stoermer's sole assignment of error being overruled, the judgment of the

---

[1] We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. 668, 689, 104 S.Ct. 2052, 82 L.Ed.2d 674. "The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel." *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 43. This deference extends to decisions regarding whether to call a witness. *Kuck*, 2d Dist. Clark No. 2017-CA-15, 2018-Ohio-3290, at ¶ 10, quoting *State v. Johnson*, 2d Dist. Montgomery No. 16803, 1998 WL 453768, *5 (Aug. 7, 1998).

trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

John M. Lintz
Kort Gatterdam
David F. Hanson
Hon. Douglas M. Rastatter